[No. B155166. Second Dist., Div. Eight. June 30, 2004.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. MANUEL NAVARRO, Defendant and Appellant.

---

## COUNSEL

Linda S. Ferrer for Defendant and Appellant.

Steve Cooley, District Attorney; Phillip Browning, L. Cruz, Nancy K. Ruffolo and Fesia A. Davenport for Plaintiff and Respondent.

---

## OPINION

**RUBIN, J.**—Manuel Navarro appeals from the trial court's denial of his motion to vacate a default judgment entered against him in 1996. The judgment established his parental relationship with two boys whom respondent County of Los Angeles now concedes are not his sons, and ordered him to pay child support. He seeks reimbursement of child support, welfare reimbursements, attorneys fees, and costs. We reverse.

## FACTS AND PROCEDURAL HISTORY

In March 1996, the Bureau of Family Support Operations in the Los Angeles County District Attorney's Office[1] (the County) filed a complaint to establish the paternity and child support obligations of "Manuel Nava" for two boys born in December 1995 who had been receiving public assistance. The County attempted substitute service of the complaint in May 1996 by leaving a copy at appellant's address with "Jane Doe," listed as "sister" and "co-tenant" and serving a copy by first class mail. The complaint alerted appellant of the danger of not answering the complaint if he denied paternity, and warned he could become liable for child support if the court determined he was the boys' father. Appellant did not answer the complaint and the County took his default in July 1996. The court thereafter entered judgment establishing appellant's paternity and ordered him to pay $247 in monthly child support.

Five years later in July 2001 appellant filed a motion to set aside the judgment and have his answer deemed filed because a recent genetic blood test indisputably proved he was not the boys' father. He claimed that although he lived at the address cited on the complaint's proof of service, and he never attempted to avoid service, he nonetheless never received a copy of the summons and complaint or default judgment. In support of his motion, he noted that blood tests in a separate paternity action in San Bernardino County had conclusively proven a few months earlier that he was not the boys' father. Based on those tests, San Bernardino County authorities had dismissed their paternity suit against him with prejudice. Acknowledging the six-month period for setting aside the judgment under Code of Civil Procedure section 473 had long passed, he argued relief was nevertheless proper because the boys' mother had committed extrinsic fraud in asserting he was the father when in fact he was not, thus depriving him of a fair adversarial hearing.

The County opposed the motion, arguing appellant had not shown extrinsic fraud or mistake. According to the County, the mother's mere assertion that he was the father was insufficient to establish *extrinsic* fraud. Apparently agreeing with the County, the court denied appellant's motion to set aside the judgment. This appeal followed.

## DISCUSSION

■ By strict application of the law, appellant should be denied relief. He did not file his motion to set aside the County's default judgment

---

[1] Pursuant to Family Code section 17304, on July 1, 2001, the County of Los Angeles Child Support Services Department replaced the District Attorney's Bureau of Family Support Operations as the County agency charged with establishing parentage and obtaining and enforcing orders for support.

against him until five years after its entry, long past the maximum six months allowed for setting aside a default judgment. (Code Civ. Proc., § 473, subd. (b).) Furthermore, appellant cannot win relief under the doctrine of extrinsic fraud because mother's false assertion that he was the boys' father is not the sort of falsehood the doctrine encompasses. (See, e.g., *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 632–633 [99 Cal.Rptr. 393].) In sum, a narrow, technical reading of the controlling case law and statutes, with their emphasis on the public interest in the finality of judgments, suggests the trial court ruled correctly.

Sometimes even more important policies than the finality of judgments are at stake, however. Mistakes do happen, and a profound mistake occurred here when appellant was charged with being the boys' father, an error the County concedes. Instead of remedying its mistake, the County retreats behind the procedural redoubt offered by the passage of time since it took appellant's default.[2]

 It is this state's policy that when a mistake occurs in a child support action, the County must correct it, not exploit it. When the Legislature enacted the Child Support Enforcement Fairness Act of 2000, it declared "The efficient and fair enforcement of child support orders is essential to ensuring compliance with those orders and respect for the administration of justice . . . . Thousands of individuals each year are mistakenly identified as being liable for child support actions. As a result of that action, the ability to earn a living is severely impaired, assets are seized, and family relationships are often destroyed. It is the *moral, legal, and ethical obligation of all enforcement agencies* to take prompt action to recognize those cases where a person is mistakenly identified as a support obligor in order to minimize the harm and *correct any injustice to that person*." (Stats. 1999, ch. 653, § 1, italics added.)

 The County, a political embodiment of its citizens and inhabitants, must always act in the public interest and for the general good. It should not enforce child support judgments it knows to be unfounded. And in particular, it should not ask the courts to assist it in doing so. Despite the Legislature's clear directive that child support agencies not pursue mistaken child support actions, the County persists in asking that we do so. We will not sully our

---

[2] We recognize that finality and certainty assume greater importance when the issue is paternity in a long-standing parent-child relationship, for then the child's psychological well-being is at stake. Here, however, the issue is solely the cold, hard cash of child support, as appellant has always denied paternity and has no relationship with the boys. In this dispute over money, the greater equities lie with appellant, who has no relationship with the boys, than with the County, whose obligation to the general welfare compelled it to support the boys when their real father did not.

hands by participating in an unjust, and factually unfounded, result. We say no to the County, and we reverse.

## DISPOSITION

The order denying appellant's motion to set aside the default judgment is reversed. Each side to bear their own costs on appeal.

Cooper, P. J., and Boland, J., concurred.