[No. G037562. Fourth Dist., Div. Three. Oct. 3, 2007.]

COUNTY OF ORANGE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JASON M. ROTHERT et al., Real Parties in Interest.

[No. G037952. Fourth Dist., Div. Three. Oct. 3, 2007.]

COUNTY OF ORANGE, Plaintiff and Appellant, v.
JASON M. ROTHERT, Defendant and Respondent.

## COUNSEL

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Thomas R. Yanger, Assistant Attorney General, Paul Reynaga and Linda M. Gonzalez, Deputy Attorneys General, for Petitioner and for Plaintiff and Appellant.

No appearance for Respondent.

Terence W. Roberts for Real Party in Interest and for Defendant and Respondent Jason M. Rothert.

No appearance for Real Party in Interest Elicia E.

Law Office of Diane Vargas and Diane Vargas for Minor.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

The Orange County Department of Child Support Services (the Department) appealed from an order for genetic testing issued pursuant to Family Code section 7575. (All further statutory references are to the Family Code, unless otherwise noted.)

As explained *post*, we treat the appeal as a petition for writ of mandate, and grant the petition. The order was issued preliminarily to the court's ruling on a motion to set aside a paternity judgment based on a voluntary declaration of paternity. The motion to set aside was filed more than two years after the child's birth, and was therefore untimely under sections 7646, subdivision (a)(2) and 7575, subdivision (b). There was no extrinsic fraud in this case which would permit the trial court, using its equity powers, to set aside the paternity declaration despite its untimeliness. The trial court could not set aside the paternity judgment and therefore abused its discretion by ordering genetic testing for the purpose of deciding whether to set aside the judgment.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Kameron E. was born in November 2000. Jason M. Rothert and Elicia E. signed a paternity declaration two days after Kameron's birth, acknowledging Rothert was Kameron's biological father.

On July 19, 2001, the Department filed a summons and complaint to establish a child support order for Kameron. The issue of paternity was not placed at issue in the complaint. Rothert failed to file an answer to the complaint, and a default judgment was entered on April 23, 2002, establishing monthly support for Kameron.

On August 19, 2002, Rothert filed a motion to set aside the default judgment and submitted a proposed answer to the complaint, in which he challenged the monthly support and the amount in arrears, but admitted paternity. The trial court granted the motion on September 27, and set aside the default judgment with respect to the financial issues, but determined that the portion of the judgment establishing paternity would not be disturbed.

On July 5, 2006, Rothert filed a motion to set aside the judgment of paternity. In support of the motion, Rothert declared: "At the time the child was conceived, neither [Rothert nor Elicia] were [*sic*] in a mutually exclusive relationship. I have not seen the child since he was 3 months old, and briefly through monitored visitation. The custodial parent has never made the attempt to establish a father/child relationship. Those who have seen the child state that he does not look like me. For these reasons, I want [a] *DNA* test to establish paternity." Rothert alleged it had been less than one year since he had discovered or should have discovered the alleged fraud that had led him to sign the paternity declaration, although he did not explain the nature of any fraud.

On August 25, 2006, the trial court granted Rothert's request for genetic testing, and ordered Rothert, Elicia, and Kameron to submit to genetic testing within 30 days. The court announced it would make its decision on setting aside the judgment of paternity after receiving the results of the genetic testing. At the hearing, the trial court explained its decision: "Pursuant to section 7575[, subdivision (b)(1)], the Family Code, that is the section which talks about the rescission of a voluntary declaration of paternity. That section indicates notwithstanding section 7573, if the court finds that the conclusions of all the experts, based on the results of genetic tests, are that the man who signed the voluntary declaration is not the father of the child, the court may set aside the voluntary declaration. [¶] Clearly, if the Legislature [chose] to include that section in the 7575 decision portion of the Family Code, the Legislature contemplates the genetic testing would be ordered regarding the issue of whether or not a voluntary declaration of paternity should be set aside. [¶] Therefore, for the Department to say that simply because someone has signed the voluntary declaration of paternity, paternity is no longer an issue is in direct contravention of the clear legislative intent of the statute itself."

The Department timely appealed. The trial court denied the Department's request for a stay of proceedings pending appeal.[1]

---

[1] The Department filed a request for judicial notice concurrently with its opening brief on appeal. The Department asked us to take judicial notice of the following documents: (1) the trial court's order dated October 30, 2006; (2) the Department's request for a stay of the court's September 7, 2006 order for genetic testing; (3) the trial court's order dated November 17, 2006; (4) the legislative committee reports and analyses for Assembly Bill No. 1832 (1995–1996 Reg. Sess.); and (5) the legislative committee reports and analyses for Assembly Bill No. 252 (2003–2004 Reg. Sess.). Rothert did not oppose the request for judicial notice. The trial court's orders and the Department's request for a stay are records of a court of this state, of which we may properly take judicial notice. (Evid. Code, §§ 452, subd. (d), 459, subd. (a)(2).) Legislative history is properly the subject of judicial notice where the statutory language or meaning is ambiguous. (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326]; *Kaufman & Broad Communities,*

On December 7, 2006, the Department filed a petition for a writ of mandate, prohibition, or other appropriate relief and requested an immediate stay of the trial court proceedings from this court. We treated the Department's petition as a petition for a writ of supersedeas, and, on our own motion, granted the Department's request for an immediate stay of the proceedings. In our order, we also consolidated the Department's petition with this appeal.

## DISCUSSION

## I.

### TREATMENT AS PETITION FOR WRIT OF MANDATE

Rothert filed a motion to dismiss the Department's appeal on the ground that the genetic testing order is not a judgment or an appealable order. We do not reach this issue because we exercise our discretion to treat the appeal as a petition for a writ of mandate, in the interests of justice and judicial economy. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744–747 [29 Cal.Rptr.2d 804, 872 P.2d 143]; *Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 393–394 [69 Cal.Rptr.2d 231].) The merits of the issue have been fully briefed by the parties, and this is a case in which the failure to consider the issue at this juncture would be a dereliction of our duties as a reviewing court. We deny the motion to dismiss the appeal as moot.

## II.

### STANDARDS OF REVIEW

A trial court's order granting or denying a request for genetic testing is generally reviewed for abuse of discretion. (*Cruz v. Superior Court* (2004) 121 Cal.App.4th 646, 648 [17 Cal.Rptr.3d 368]; *In re Joshua R.* (2002) 104 Cal.App.4th 1020, 1025 [128 Cal.Rptr.2d 241]; *City and County of San Francisco v. Stanley* (1994) 24 Cal.App.4th 1724, 1729 [30 Cal.Rptr.2d 106].)

*Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 32 [34 Cal.Rptr.3d 520].) We grant the Department's request for judicial notice.

On the question of whether the trial court correctly interpreted the scope of its authority to order genetic testing under the relevant statutes, however, we review the matter de novo. (*Holmes v. Jones* (2000) 83 Cal.App.4th 882, 888 [100 Cal.Rptr.2d 138].)

## III.

### DID THE TRIAL COURT ERR BY GRANTING THE ORDER?

The Department argues the trial court erred by granting the order requiring genetic testing because Rothert's request was untimely. Before analyzing the relevant statutes, we will explain the history of those statutes.

Before the enactment of section 7646, a paternity judgment, even if it was a default judgment, was conclusive for all purposes. (§ 7636; see *County of Fresno v. Sanchez* (2005) 135 Cal.App.4th 15, 18 [37 Cal.Rptr.3d 192].) *County of Los Angeles v. Navarro* (2004) 120 Cal.App.4th 246 [14 Cal.Rptr.3d 905] (*Navarro*) highlighted the issues relating to genetic testing after entry of a default judgment. In *Navarro*, a default judgment establishing Manuel Navarro as the father of two boys born in December 1995 was entered in July 1996. (*Id.* at p. 248.) Five years later, in July 2001, Navarro filed a motion to set aside the judgment, offering the results of a genetic blood test proving he was not the boys' father. (*Ibid.*) The trial court denied the motion because it had been filed long after the six-month period provided by Code of Civil Procedure section 473, subdivision (b). (*Navarro, supra,* 120 Cal.App.4th at p. 248.) The trial court refused to grant equity relief because the mother's assertion that Navarro was the father was not extrinsic fraud. (*Ibid.*)

The appellate court concluded that fairness nevertheless required that the judgment be set aside, given the circumstances of the case. "Sometimes even more important policies than the finality of judgments are at stake, however. Mistakes do happen, and a profound mistake occurred here when [Navarro] was charged with being the boys' father, an error the County concedes. Instead of remedying its mistake, the County retreats behind the procedural redoubt offered by the passage of time since it took [Navarro]'s default." (*Navarro, supra,* 120 Cal.App.4th at p. 249.)

Article 1.5 of chapter 4 of the Uniform Parentage Act (§ 7645 et seq.), enacted in September 2004, sets forth the procedures for challenging a judgment of paternity based on the results of genetic testing. "In light of this comprehensive statutory scheme for setting aside a judgment of paternity when otherwise established procedural rules would not permit relief, it must

be concluded that section 7645 et seq., vitiates *County of Los Angeles v. Navarro*. The amorphous equitable considerations and general policies relied on in *Navarro* must give way to the later enacted detailed procedure." (*County of Fresno v. Sanchez, supra*, 135 Cal.App.4th at pp. 19–20.)[2]

Section 7646, subdivision (a) sets out the time periods within which a paternity judgment may be challenged on the basis of genetic testing: "Notwithstanding any other provision of law, a judgment establishing paternity[3] may be set aside or vacated upon a motion by . . . the previously established father of a child . . . if genetic testing indicates that the previously established father of a child is not the biological father of the child. The motion shall be brought within one of the following time periods: [¶] (1) Within a two-year period commencing with the date on which the previously established father knew or should have known of a judgment that established him as the father of the child or commencing with the date the previously established father knew or should have known of the existence of an action to adjudicate the issue of paternity, whichever is first, except as provided in paragraph (2) or (3) of this subdivision. [¶] (2) Within a two-year period commencing with the date of the child's birth if paternity was established by a voluntary declaration of paternity. Nothing in this paragraph shall bar any rights under subdivision (c) of Section 7575. [¶] (3) In the case of any previously established father who is the legal father as a result of a default judgment as of the effective date of this section, within a two-year period commencing with the enactment of this section."

Rothert argues his motion to set aside the judgment of paternity was timely under section 7646, subdivision (a)(3), which permits such a motion to be filed within two years after the enactment of the statute "[i]n the case of any previously established father who is the legal father *as a result of a default judgment as of the effective date of this section*, within a two-year period commencing with the enactment of this section." (Italics added.) Rothert's argument fails for two reasons. First, he was not established as Kameron's father as a result of a default judgment; rather, he was established as Kameron's father as a result of his voluntary declaration of paternity. The default judgment did not deal with paternity, but only with child support.

---

[2] *Navarro* was decided in June 2004 and the legislation we are considering was introduced in February 2003; it does not appear that the rules for setting aside a judgment of paternity were necessarily in response to *Navarro*.

[3] For purposes of motions to set aside a judgment of paternity, the term "judgment" includes a voluntary declaration of paternity. (§ 7645, subd. (b).)

Second, section 7646, subdivision (a)(3), by its terms, applies only where there is a default judgment as of the effective date of the statute. In this case, the default judgment was set aside on September 27, 2002—long before the statute's January 1, 2005 effective date.

 Rothert's motion is instead governed by section 7646, subdivision (a)(2) because paternity of Kameron was established through a voluntary declaration. Rothert's motion to set aside the judgment was not filed within two years after the date of Kameron's birth, making it untimely under section 7646, subdivision (a)(2). The trial court erred in concluding the Legislature must have intended that genetic testing be ordered whenever an issue regarding the paternity judgment is raised; it would be anomalous to permit the trial court to order genetic testing to determine whether to set aside a paternity judgment, when the request to set aside the judgment is time-barred. The Legislature expressly provided by statute that a challenge to a paternity judgment be made within two years of the child's birth when the judgment was established through a voluntary declaration of paternity. The legislative history for Assembly Bill No. 252 (2003–2004 Reg. Sess.), which added section 7646, explains: "This bill creates a new procedure for a person to challenge a judgment of paternity on the basis of genetic testing showing that the previously established father is not the biological father. The bill addresses the problem of men having inadequate opportunity to challenge a judgment of paternity that serves as the basis for a child support order, leaving them having to pay child support for children who are not biologically theirs. At the same time, *the bill creates a procedure intended to ensure that finality is reached in paternity actions within a reasonable period of time, and to protect the interests of a child who may suffer a loss of support*, or even of a relationship with the man the child believed to be its father." (Assem. Com. on Judiciary, 3d reading analysis of Assem. Bill No. 252 (2003–2004 Reg. Sess.) as amended Jan. 26, 2004, p. 3, italics added.)

In the next step of the analysis, section 7646, subdivision (a)(2) permits Rothert to pursue his rights under section 7575, subdivision (c), which reads, in relevant part, as follows: "(1) Nothing in this chapter shall be construed to prejudice or bar the rights of either parent to file an action or motion to set aside the voluntary declaration of paternity on any of the grounds described in, and within the time limits specified in, Section 473 of the Code of Civil Procedure.[4] . . . [¶] . . . [¶] (4) Nothing in this section is intended to restrict a court from acting as a court of equity. [¶] (5) If the voluntary declaration of paternity is set aside pursuant to paragraph (1), the court shall order that the mother, child, and alleged father submit to genetic tests pursuant to Chapter 2 (commencing with Section 7550)."

---

[4] Code of Civil Procedure section 473 provides no help to Rothert, because his request to set aside the judgment was not timely under its terms.

The trial court in this case explicitly relied on its powers as a court of equity in ordering genetic testing. At the hearing on the Department's request for a stay pending appeal, the trial court explained its earlier order for genetic testing in part as follows: "Family Code section 7575(c)(4) states, 'Nothing in this section is intended to restrict a court from acting as a court of equity.' The court, based upon the reading of those code sections found that the legislative intent of those code sections was that genetic testing could be ordered within the discretion of the court when the issue of paternity was placed before the court. This court determined that there had been an issue regarding paternity placed before the court based upon a default judgment which had been entered pursuant to substituted service in a situation where the defendant/respondent, had made a motion to asset aside and requested genetic testing."

On appeal, Rothert does not argue the trial court's inherent equity powers permitted it to order genetic testing. However, that issue is raised by the appellate record, and given our de novo review, we will address it. The court's powers in equity are significant, but not limitless. In order to vacate a judgment after the statutorily imposed time limits, extrinsic fraud must be shown. "The type of fraud necessary to vacate a final judgment is extrinsic fraud, not fraud which is intrinsic to the trial of the case itself. [Citation.] Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] . . . The essence of extrinsic fraud is one party's preventing the other from having his day in court." (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067 [41 Cal.Rptr.2d 797] [where the father stipulated to paternity based on the mother's statements of his paternity, there was no extrinsic fraud and the court could not set aside the judgment of paternity].)

Rothert's motion to set aside the judgment alleged he and Elicia were not "mutually exclusive" while they were in a relationship, and he had heard from unnamed individuals that Kameron did not look like him. Given the definition of extrinsic fraud set forth above, even if these allegations were true, extrinsic fraud has not been sufficiently alleged. (*County of Fresno v. Sanchez, supra*, 135 Cal.App.4th at p. 18; *Navarro, supra*, 120 Cal.App.4th at p. 249, superseded by statute on other grounds; *Brown v. Superior Court* (1979) 98 Cal.App.3d 633, 636 [159 Cal.Rptr. 604].) In addition, the evidentiary showing made in the trial court by Rothert is inadequate to show any kind of fraud, intrinsic or extrinsic.

Next, we address section 7575, subdivision (b), which the court relied on as authority for its genetic testing order. That statute reads, in relevant part, as follows: "Notwithstanding Section 7573, if the court finds that the conclusions of all of the experts based upon the results of the genetic tests performed pursuant to Chapter 2 (commencing with Section 7550) are that the man who signed the voluntary declaration is not the father of the child, the court may set aside the voluntary declaration of paternity unless the court determines that denial of the action to set aside the voluntary declaration of paternity is in the best interest of the child . . . . [¶] . . . [¶] . . . The notice of motion for genetic tests under this section may be filed not later than two years from the date of the child's birth by . . . the man who signed the voluntary declaration as the child's father . . . ." (§ 7575, subd. (b)(1) & (3)(A).) Consistent with section 7646, subdivision (a), section 7575, subdivision (b) requires that a motion for genetic testing to determine whether a voluntary declaration of paternity should be set aside must be filed within two years of the child's birth. (This statute became effective Jan. 1, 1997, and was not part of the legislation enacting § 7646.) Rothert's request for genetic testing as part of his motion to set aside the judgment of paternity was untimely.

Finally, Kameron's counsel raises two additional points that bear addressing. First, she argues the doctrines of estoppel and res judicata bar the Department from relying on Rothert's voluntary declaration of paternity. Counsel argues that the 2001 complaint filed by the Department did not contain a check in the box stating that a voluntary declaration of paternity existed. However, to the extent that estoppel or res judicata applies in this case, which we need not determine, it would advise in favor of preserving the finality of the trial court's determination of Rothert's paternity, not against it.

Second, Kameron's counsel raises a policy argument that a child should be able to know the true identity of his or her biological father, and that reversing the court's current order could lead to Kameron's inability to ever know the identity of his biological father. Our Legislature enacted the Uniform Parentage Act to address these and other policy concerns relating to child support. Our role as a reviewing court is not to determine whether the Legislature's policy choices were right or wrong.

### DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the superior court to vacate its August 25, 2006 order requiring Rothert, Elicia, and Kameron to submit to genetic testing. Our writ of supersedeas shall be dissolved upon issuance of the remittitur.

Aronson, Acting P. J., and Ikola, J., concurred.