Filed 8/16/21  Campbell v. Santa Cruz County Dept. of Child Support Services CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JASON CAMPBELL,<br><br>    Defendant and Appellant,<br><br>    v.<br><br>SANTA CRUZ COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Plaintiff and Respondent. | H047731<br>(Santa Cruz County<br>Super. Ct. No. PA015361) |

A default paternity judgment was entered against appellant, Jason Campbell, in 2014.  In 2019, Campbell moved to set aside the judgment based on DNA tests showing that he was not the biological father of the child.  The trial court denied the motion as untimely, finding it was filed more than two years after Campbell knew or should have known of the action or judgment.  On appeal, Campbell argues the court erred in excluding certain evidence he maintains shows he did not learn about the action until 2017, making his motion timely.  Alternatively, he argues the judgment can be set aside as inherently unfair.  We shall affirm.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Mother had a child in June 2013.  In May 2014, the Santa Cruz County Department of Child Support Services (Santa Cruz DCSS) filed a complaint against Campbell seeking to establish that he is the child's father and to establish child support. The complaint alleged that the child is receiving public assistance from Santa Cruz

County and that Campbell was named as the child's father in the declaration of parentage on file with the county welfare department.

On June 9, 2014, Santa Cruz DCSS filed a proof of service of summons on Campbell. According to the proof of service, Campbell was personally served by a Santa Cruz County Sheriff's Deputy at 1:40 p.m. on May 27, 2014 at 1600 El Rancho Drive in Santa Cruz.

Campbell filed no answer or other responsive pleading. On July 8, 2014, Santa Cruz DCSS filed a request to enter default judgment pursuant to Family Code section 17430.[1] The Santa Cruz County Superior Court entered default judgment against Campbell on July 16, 2014. Campbell was served with the judgment by mail at 1600 El Rancho Drive in Santa Cruz on July 17, 2014. The judgment was registered in Monterey County for enforcement.

Campbell contacted the Monterey County Department of Child Support Services (Monterey DCSS) in August 2017 to request genetic testing. He was advised to contact the Family Law Facilitator.

On April 5, 2019, Campbell, acting in propria persona, moved to set aside the judgment of paternity in Monterey County Superior Court. In a supporting declaration, Campbell declared that two DNA tests prove he is not the child's biological father, Mother has never told him he is the child's father or sought financial support from him, he did not live at 1600 El Rancho Drive at the time he purportedly was served with the complaint and judgment there, and he "first learned of the child-support case against [him] in 2016." Campbell further declared that he was scheduled to have spinal fusion surgery on May 17, 2019. Medical records evidencing the scheduled surgery and the

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

DNA tests showing Campbell is not the child's biological father were attached to the motion.

Monterey DCSS opposed the motion. In support of that opposition, Monterey DCSS submitted United States Postal Service verifications stating that mail was delivered to Campbell at 1600 El Rancho Drive in Santa Cruz in August 2013, February 2014, and July 2015.

At a hearing on July 3, 2019, the Monterey County Superior Court ordered Campbell to provide proof of his address on May 27, 2014 to Monterey DCSS by July 31, 2019.

On July 29, 2019, the Monterey County Superior Court ordered that the case be registered in Santa Cruz County for the "limited issue of whether or not [Campbell] was properly served with the Summons and Complaint." Santa Cruz DCSS registered the matter with the Santa Cruz County Superior Court upon the request of Monterey DCSS on August 22, 2019.

On August 30, 2019, Santa Cruz DCSS filed a brief opposing Campbell's motion as untimely. Santa Cruz DCSS filed a supplemental brief on September 30, 2019, noting that Campbell had failed to comply with the Monterey County Superior Court's order to provide proof of his address on May 27, 2014 to Monterey DCSS. Santa Cruz DCSS asserted that Campbell "should be precluded from offering such evidence at the [October 9,] 2019 hearing."

The following day, Campbell filed a declaration in Santa Cruz County Superior Court stating that he "was on a heavy dose of hydrocodone" due to upcoming spinal surgery at the time he made his prior declaration stating that he learned of the action in 2016. He further declared that the hydrocodone "influenced [his] ability to accurately recall" when he first learned of the action; he "contacted [DCSS] immediately after [he] learned of the child support case"; and, per DCSS, he first contacted them on August 14, 2017.

Also on October 1, 2019, Campbell filed two additional affidavits. In the first, Chris Sorensen stated that he lived at 1600 El Rancho Drive in Santa Cruz with Campbell in 2013. Sorensen further stated that he returned to the property to retrieve some belongings on May 27, 2014, at which time a Sherriff's deputy served him with papers. Sorensen stated that he realized the papers were addressed to Campbell after the officer departed. Sorensen left the papers at the residence, unaware that Campbell no longer lived there. In the second affidavit, Campbell's mother and stepfather stated that they own the property located at 1600 El Rancho Drive in Santa Cruz; that Campbell rented their pool cottage from 2009 through 2013; that Chris Sorensen lived in the pool cottage with Campbell for approximately six months in 2013; and that Sorensen would have had access to the pool cottage in May 2014 because they leave the cottage unlocked.

At a hearing on October 9, 2019, DCSS's counsel noted that it had received declarations from Campbell the previous day—Campbell's declaration and the affidavits filed on October 1, 2019. For reasons that are not apparent from the record, the court was unaware of Campbell's October 1, 2019 filing until that time. Counsel for DCSS objected to the affidavits on hearsay grounds. The court sustained those objections. It is not clear whether the court considered Campbell's second declaration, including his statement that he had previously misstated the date on which he learned of the action. The court denied the motion as untimely.

Campbell timely appealed.

## II.    DISCUSSION

### A.    *Legal Principles*

"Notwithstanding any other law, a judgment establishing parentage may be set aside or vacated upon a motion by a previously established parent . . . if genetic testing indicates that the previously established father of a child is not the genetic father of the child." Such a motion must be brought "[w]ithin a two-year period commencing with the date on which the previously established father knew or should have known of a

4

judgment that established the father's parentage of the child or commencing with the date the previously established father knew or should have known of the existence of an action to adjudicate the issue of parentage, whichever is first . . . ." (§ 7646, subd. (a)(1).)

"We review a trial court's evidentiary rulings for abuse of discretion." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*).) "Discretion is abused only when, in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.] There must be a showing of a clear case of abuse and miscarriage of justice in order to warrant a reversal. [Citation]." (*Ibid.*) The erroneous exclusion of evidence causes prejudice to appellant amounting to a " 'miscarriage of justice' " only if "a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide* (2007) 157 Cal.Ap.4th 1471, 1480; see also Cal. Const., art. I, § 13; Evid. Code, § 354.) " 'Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred. [Citations.]' [Citation.]" (*Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 58.) It likewise is an appellant's burden to establish abuse of discretion. (*Shaw*, *supra*, at p. 281.)

### B.     Analysis

Campbell asserts two arguments on appeal. First, he maintains that the superior court erroneously refused to consider evidence he submitted showing he did not learn of the action until August 2017, less than two years before he filed his motion. Second, he argues that the court's ruling is inherently unfair.

#### 1.     Evidentiary Challenges

Campbell maintains the trial court erred by excluding the affidavits on hearsay grounds. However, "[h]e provides no substantive argument or citation to authority to support this contention, and we therefore deem it abandoned." (*Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 222, fn. 6 (*Mangano*); *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 (*Berger*) ["the failure of appellant to advance any pertinent or

5

intelligible legal argument . . . constitute[s] an abandonment of the appeal"]; see *Tellez v. Rich Voss Trucking*, *Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"].)

Campbell also maintains the superior court erroneously refused to consider his second declaration stating that he erred when, in his first declaration, he stated that he learned of the action in 2016. It is unclear from the record whether the court considered Campbell's second declaration. We shall assume that the court excluded that evidence and that doing so constituted an abuse of discretion. Reversal for that assumed error would be appropriate only if Campbell showed prejudice—that is, that it is reasonably probable that a result more favorable to him would have been reached in the absence of the error. (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799.) Campbell does not make that showing.[2] It is not reasonably probable that the court below would have credited Campbell's self-serving second declaration over the proof of service showing he was personally served with the complaint at 1600 El Rancho Drive in Santa Cruz in May 2014, the proof of service showing he was served with the judgment by mail at the same address in July 2014, and the verifications from the United States Postal Service showing he was receiving mail at that address in that time frame.

### 2. *Unfairness Argument*

Alternatively, Campbell argues that the appealed-from order is inherently unfair because it compels him to financially support a child that DNA tests prove is not his. Campbell cites no case law or other authority allowing this court to create an equitable

---

[2] Campbell argues that, had the court admitted all of his evidence, there would have been substantial evidence supporting a finding that he first learned of the action in 2017. That is not the proper inquiry.

6

exception to section 7646. Accordingly, we deem the argument abandoned. (*Mangano*, *supra*, 179 Cal.App.4th at p. 222, fn. 6; *Berger*, *supra*, 163 Cal.App.3d at p. 1117.)

Even if we were to reach the merits of Campbell's argument, we would be compelled to reject it. Section 7646 was enacted in 2004 (Stats. 2004, ch. 849, § 4). The legislative history explains the provision's purposes: to "address[] the problem of men having inadequate opportunity to challenge a judgment of paternity that serves as the basis for a child support order, leaving them having to pay child support for children who are not biologically theirs" and, "[a]t the same time, . . . [to] create[] a procedure intended to ensure that finality is reached in paternity actions within a reasonable period of time, and to protect the interests of a child who may suffer a loss of support, or even of a relationship with the man the child believed to be its father." (Assem. Jud. Com., 3d reading analysis of Assem. Bill No. 252 (2003-2004 Reg. Sess.) as amended Jan. 26, 2004, p. 3.) Creating an equitable exception to section 7646 would undermine the Legislature's intent to ensure finality in parentage actions. That we may not do; "[o]ur role as a reviewing court is not to determine whether the Legislature's policy choices were right or wrong." (*County of Orange v. Superior Court* (2007) 155 Cal.App.4th 1253, 1262.)

## III.  DISPOSITION

The order denying Campbell's motion to set aside the default judgment is affirmed.

_____

ELIA, ACTING P.J.


WE CONCUR:




_____

BAMATTRE-MANOUKIAN, J.




_____

DANNER, J.




*Campbell v. Santa Cruz County Department of Child Support Services*
H047731