[No. D054761. Fourth Dist., Div. One. Apr. 6, 2010.]

ESAUL ALATRISTE, Plaintiff and Respondent, v.
CESAR'S EXTERIOR DESIGNS, INC., Defendant and Appellant.

658

---

## COUNSEL

Procopio, Cory, Hargreaves & Savitch and Jeff S. Hood for Defendant and Appellant.

Higgs, Fletcher & Mack and Mary R. Robberson for Plaintiff and Respondent.

---

## OPINION

**HALLER, J.**—Esaul Alatriste paid Cesar's Exterior Designs, Inc. (Cesar's Designs), $57,500 for landscaping work at his home. Alatriste then sued Cesar's Designs seeking reimbursement of the $57,500 under the statute allowing a party to recover "all compensation paid to [an] unlicensed contractor." (Bus. & Prof. Code, § 7031, subd. (b).)[1] Alatriste successfully moved for summary adjudication on this claim. After Alatriste dismissed his remaining claims, the court entered judgment in Alatriste's favor for $57,500 plus interest and costs.

Cesar's Designs concedes it was unlicensed when it began the landscape work, but contends the court erred in granting summary adjudication because it presented facts supporting its defenses and/or offsets to Alatriste's section 7031(b) claim. This contention is without merit. The proffered facts do not support a viable defense or offset to Alatriste's reimbursement claim under section 7031(b). Specifically, we hold that (1) Alatriste's prior knowledge of Cesar's Designs's unlicensed status does not bar his section 7031(b) reimbursement claim; (2) Alatriste is entitled to recover the total amount paid even though Cesar's Designs was licensed during a portion of the work; and (3) Alatriste is entitled to recover payments for materials retained by him (in addition to payments for labor). Accordingly, we affirm.

---

[1] All statutory references are to the Business and Professions Code, unless otherwise specified. For ease of reference, we omit the word subdivision from references to section 7031.

## FACTUAL AND PROCEDURAL BACKGROUND

Alatriste retained Cesar's Designs to perform landscape construction services at Alatriste's newly built home. After working for about five months, Cesar's Designs terminated its services when Alatriste refused to continue to pay for work performed. By that time, Alatriste had paid Cesar's Designs $57,500.

Alatriste then brought an action against Cesar's Designs, alleging fraud, negligent misrepresentation, and unfair competition, and also sought to recover the total amount paid under section 7031(b) because Cesar's Designs was unlicensed when it began the work.[2]

Alatriste moved for summary adjudication solely on the section 7031(b) claim. In support, Alatriste presented evidence that the parties signed a contract on December 1, 2006, in which Alatriste agreed to pay $91,900 in four installments for the landscape work. This evidence showed that Cesar's Designs began work on December 11 and left the project five months later on May 26, 2007. Alatriste also submitted documents from the state licensing board showing Cesar's Designs did not have a landscaping contractor's license until April 5, 2007, and had never before been licensed. Alatriste said he paid a total of $57,500 to Cesar's Designs.

In opposition, Cesar's Designs conceded that (1) it entered into a written contract with Alatriste to perform landscape construction work on December 1, 2006, for $91,900; (2) it did not have a license on that date or at any time before that date; (3) it first obtained a contractor's license on April 5, 2007; and (4) Alatriste paid Cesar's Designs a total of $57,500 on the project. But Cesar's Designs argued these facts did not support summary adjudication on Alatriste's statutory reimbursement claim because triable factual issues existed on its defenses, including estoppel, unclean hands, fraud, and unjust enrichment. Cesar's Designs also argued Alatriste was not entitled to recover the portion of the payment (1) for work performed while Cesar's Designs was licensed (between Apr. 5 and May 26); and (2) for materials (as opposed to labor).

In support of these assertions, Cesar's Designs submitted the declaration of its president (Cesar Hernandez), who stated he had known Alatriste for 12 years and "[a]t the time we were negotiating the contract, [Alatriste] understood that neither I nor my company had a California contractor's license. At that time, my son, Cesar Hernandez Jr., was studying for, and was scheduled

---

[2] Alatriste also sued Cesar's Designs's president, but then dismissed this defendant after the court denied summary adjudication on those claims. We thus do not further discuss the claims against this party.

to take, the California contractor's license exam. My company was going to operate under my son's license. [¶] . . . Between September and November of 2006, I informed [Alatriste] on at least three (3) occasions that my son was scheduled to take the California contractor's license exam at the end of 2006 or early 2007. [Alatriste] understood that my company did not yet have a license during this time. [¶] . . . Knowing that [Cesar's Designs] did not yet have a license at the time, [Alatriste] nonetheless asked [Cesar's Designs] to perform the landscaping work at his new home."

Hernandez also explained the circumstances under which his company became licensed: "On January 23, 2007, before any significant work had been performed at [Alatriste's] home, my son tested for his California contractor's license. On that same day, we found out my son passed the test . . . . [¶] . . . Two (2) months later, in March of 2007, not having received any word regarding the issuance of the license, I contacted the State Contractor's License Board . . . [and] was informed the Board was unable to issue a license because it allegedly never received a $150 processing and license fee when the application was submitted in January. Immediately, I resubmitted the paperwork and the $150 fee." Hernandez said his son was then issued the license on April 5, 2007. Hernandez stated that at least once during the construction period, he "discussed with [Alatriste] the fact that [Cesar's Designs] was awaiting the issuance of a license."

Hernandez also asserted that Alatriste never expressed any dissatisfaction with the work performed during the project and the sole reason Alatriste stopped paying for the work was because Alatriste was having financial problems. In this respect, Hernandez said: "[Alatriste] continually reminded me that we were 'good friends' and [Alatriste] would come up with the money soon. [Cesar's Designs] attempted to accommodate the situation by extending the time for payments, but eventually had to cease work due to [Alatriste's] failure to make payments." Hernandez said that when Cesar's Designs left the site, Alatriste still owed $15,648.55 for work performed. With respect to Cesar's Designs's offset claims, Hernandez said: "Of the amount paid by [Alatriste] to Cesar's Designs, $11,968 was for labor and materials provided while Cesar's Designs had a California contractor's license[,] [¶] [and] . . . $20,045.16 was for materials used and incorporated into the project."[3]

In reply, Alatriste submitted his declaration denying that he knew that Cesar's Designs was not licensed during the project, but argued that even if

---

[3] Cesar's Designs further presented evidence that the parties agreed to an additional work order on May 16, 2007, for an increased sum of $2,382, but there was no evidence this work was performed or that the amount Alatriste sought to recover included any of this additional work.

he knew, knowledge by the consumer is not a bar to recovery under section 7031(b). Alatriste also stated that in May 2007, he experienced "serious problems with Cesar's performing substandard, shoddy work on my residence," and identified numerous specific defects. Alatriste said he informed Hernandez and his son of those problems.

After a hearing, the court granted summary adjudication on Alatriste's statutory reimbursement claim. The court found that Alatriste proved he was entitled to full reimbursement, and rejected Cesar's Designs's defenses. Specifically, the court ruled that a plaintiff's prior knowledge of a defendant's unlicensed status does not bar recovery under section 7031(b), and that Cesar's Designs did not establish a substantial compliance defense under the statute. Alatriste then dismissed all remaining causes of action and defendants. The court entered a final judgment against Cesar's Designs for $57,500 plus interest for a total amount of $66,762.25.

## DISCUSSION

### I. *Governing Review Standards*

A court properly grants summary adjudication on a cause of action if the record establishes no triable issue as to any material fact, and the moving party is entitled to prevail on the claim as a matter of law. (Code Civ. Proc., § 437c, subds. (c) & (f).) The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We conduct a de novo review of the court's summary adjudication ruling. (*Id.* at p. 860.)

■ In contending the court erred in granting summary adjudication, Cesar's Designs raises several issues of first impression pertaining to the proper interpretation of section 7031(b). In considering these issues, our fundamental objective is to ascertain the legislative intent. In so doing, we focus initially on the words of the statute " ' " 'because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " ' [Citation.]" (*San Diego*

*County Employees Retirement Assn. v. County of San Diego* (2007) 151 Cal.App.4th 1163, 1174 [60 Cal.Rptr.3d 601].)

" ' " " 'If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' [Citation.] '[T]he courts "should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' [Citations.] . . ." ' " (*San Diego County Employees Retirement Assn. v. County of San Diego, supra*, 151 Cal.App.4th at p. 1174.)

The proper interpretation of section 7031(b) presents a legal question subject to our independent review on appeal.

## II. *Contractor Licensing Laws: the Sword and the Shield*

■ Section 7031(b) is part of the Contractors' State License Law (§ 7000 et seq.), which "is a comprehensive legislative scheme governing the construction business in California. [This statutory scheme] provides that contractors performing construction work must be licensed unless exempt. (§§ 7026 et seq., 7040 et seq.) 'The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]' [Citation.] The [laws] are designed to protect the public from incompetent or dishonest providers of building and construction services. [Citation.]" (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517 [100 Cal.Rptr.3d 434], fn. omitted (*White*).)

This statutory scheme encourages licensure by subjecting unlicensed contractors to criminal penalties and civil remedies. (*White, supra*, 178 Cal.App.4th at p. 518.) The civil remedies "affect the unlicensed contractor's right to receive or retain compensation for unlicensed work." (*Ibid.*) The hiring party is entitled to enforce these remedies through a defensive "shield" or an affirmative "sword." (*Id.* at pp. 518–519.)

■ The *shield*, contained in section 7031(a),[4] was enacted more than 70 years ago, and provides that a party has a complete defense to claims for

---

[4] Section 7031(a) states: "Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without

compensation made by a contractor who performed work without a license, unless the contractor meets the requirements of the statutory substantial compliance doctrine. (See *WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 587 [76 Cal.Rptr.3d 8] (*WSS Industrial*).) Section 7031(e), the substantial compliance exception, provides relief only in very narrow specified circumstances, and *"shall not apply . . . where the [unlicensed contractor] has never been a duly licensed contractor in this state."*[5] (Italics added; see *WSS Industrial, supra,* 162 Cal.App.4th at pp. 589, 594–595.)

The California Supreme Court has long given a broad, literal interpretation to section 7031(a)'s shield provision. (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 994–1002 [277 Cal.Rptr. 517, 803 P.2d 370] (*Hydrotech*).) The court has held that section 7031(a) applies even when the person for whom the work was performed *knew* the contractor was unlicensed. (*Hydrotech, supra,* at p. 997.) Additionally, unlicensed contractors are presumed to have knowledge of the law's requirements and a contractor cannot circumvent section 7031(a) by alleging the beneficiary's false promise to pay despite the contractor's lack of licensure. (*Hydrotech, supra,* at p. 1002.) The high court also recently reconfirmed that "section 7031(a) bars a person from suing to recover compensation for *any* work he or she did under an agreement for services requiring a contractor's license unless proper licensure was in place *at all times* during such contractual performance." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 419 [30 Cal.Rptr.3d 755, 115 P.3d 41] (*MW Erectors*).) The court explained that " ' "Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties,* and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] . . ." ' " (*Id.* at p. 423.) " 'Because of the strength and clarity of this policy' [citation], the bar of section 7031(a) applies '[r]egardless of the

---

alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."

[5] Section 7031(e) states: "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, . . . the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, (3) did not know or reasonably should not have known that he or she was not duly licensed when performance of the act or contract commenced, and (4) acted promptly and in good faith to reinstate his or her license upon learning it was invalid."

equities.' " (*Ibid.*; see *Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 152 [308 P.2d 713] ["the courts may not resort to equitable considerations in defiance of section 7031"].)

In 2001, the Legislature amended section 7031 to add a *sword* remedy to the hiring party's litigation arsenal. This sword remedy, contained in section 7031(b), currently reads: "Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract."

■ By adding this remedy, the Legislature sought to further section 7031(a)'s policy of deterring violations of licensing requirements by "allow-[ing] persons who utilize unlicensed contractors to recover compensation paid to the contractor for performing unlicensed work. [Citation.]" (*White, supra*, 178 Cal.App.4th at p. 519.) A legislative committee analysis stated the purpose of the measure was " 'to address the recent case of *Cooper v. Westbrook Torrey Hills, LP* (2000) 81 Cal.App.4th 1294 [97 Cal.Rptr.2d 742], in which the court, in an unpublished portion of the opinion, referred to Section 7031(a) prohibiting an unlicensed contractor from recovering fees, but not requiring any refund of compensation already paid to the contractor. . . . This measure is intended to clearly state that those using the services of unlicensed contractors are entitled to bring an action for recovery of compensation paid.' " (*Id.* at p. 519, quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 678 (2001–2002 Reg. Sess.) as introduced Feb. 22, 2001, p. 2.)

Based on its examination of the statutory language and legislative history, the *White* court concluded that the Legislature intended that courts interpret section 7031(a) and (b) in a consistent manner, resulting in the same remedy regardless of whether the unlicensed contractor is the plaintiff or the defendant. (*White, supra*, 178 Cal.App.4th at pp. 519–520.) "[S]ection 7031(b) was designed to treat persons who have utilized unlicensed contractors consistently, regardless of whether they have paid the contractor for the unlicensed work. In short, those who have not paid are protected from being sued for payment and those who have paid may recover all compensation delivered. Thus, unlicensed contractors are not able to avoid the full measure of the [statutory scheme's] civil penalties by (1) requiring prepayment before undertaking the next increment of unlicensed work or (2) retaining progress payments relating to completed phases of the construction." (*Id.* at p. 520.)

### III. *Analysis*

Alatriste sued to recover the total amount paid to Cesar's Designs under section 7031(b)'s sword provision. In moving for summary adjudication,

Alatriste presented evidence that the work performed required a landscape contractor's license, but Cesar's Designs did not have this license when it began the work. Further, Alatriste's evidence showed he paid $57,500 to Cesar's Designs for the landscaping work and materials. On this record, Alatriste met his summary adjudication burden to show he is entitled to a full reimbursement of the amounts paid to Cesar's Designs. (See § 7031, subd. (b).)

The burden thus shifted to Cesar's Designs to show a triable issue of fact as to Alatriste's entitlement to the $57,500. Cesar's Designs contends it met this burden by presenting evidence that Alatriste knew Cesar's Designs was unlicensed, but nonetheless retained its services and benefited from the work. He argues this evidence supports its defenses of fraud, unjust enrichment, estoppel, and unclean hands. Cesar's Designs alternatively argues that it was entitled to an offset because (1) a portion of Alatriste's payment was for work after Cesar's Designs became licensed; and (2) a portion of Alatriste's payment to Cesar's Designs was for materials (rather than labor). For the reasons discussed below, we find these contentions to be without merit.

### A. Alatriste's Knowledge of Cesar's Designs's Unlicensed Status

Section 7031(b) does not specifically state whether a plaintiff's prior knowledge of the defendant's unlicensed status is relevant to a plaintiff's recovery. Because the statute is ambiguous on this point, we may look to other indicia of intent, including legislative history and other related statutes. These materials unequivocally show that in enacting section 7031(b), the Legislature specifically intended to permit full recovery even if the hiring party had actual knowledge the contractor was unlicensed.

First, section 7031(a) has long been interpreted to allow a homeowner to apply the shield to any recovery despite the homeowner's knowledge of a contractor's unlicensed status. (*Hydrotech, supra,* 52 Cal.3d at p. 997.) As discussed, the Legislature enacted section 7031(b) to ensure the same penalties apply for an unlicensed contractor regardless whether the contractor was the plaintiff or the defendant. (*White, supra,* 178 Cal.App.4th at pp. 519–520.) Thus, we reasonably infer that the Legislature intended that a moving party's knowledge would not affect his or her right to reimbursement under section 7031(b).

But we need not merely rely on an inference because the knowledge issue was specifically addressed in the legislative history materials. (See *White, supra,* 178 Cal.App.4th at p. 519.) An earlier version of the bill enacting section 7031(b) had provided that reimbursement would *not* be permitted

"when the person who used the services of an unlicensed contractor *knew* that the contractor was unlicensed prior to the time that any payments are made." (Sen. Com. on Business and Professions, Analysis of Assem. Bill No. 678 (2001–2002 Reg. Sess.) as amended May 1, 2001, pp. 1, 2, italics added.) This provision was initially included because of a concern that the bill would be "unfair[]" to a contractor who fully performed the contract and would "unjustly enrich[]" the hiring party. (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 678 (2001–2002 Reg. Sess.) as introduced Feb. 22, 2001, p. 4.) However, the Senate later deleted this language "in order to more strongly encourage contractors to become licensed." (Assem. Com. on Judiciary, Analysis of Sen. Amends. to Assem. Bill No. 678 (2001–2002 Reg. Sess.) as amended July 3, 2001, p. 2.)

An earlier legislative committee analysis quoted the bill sponsor explaining that: " 'In AB No. 678, the question has been raised as to whether a person for whom work was performed by an unlicensed contractor would be entitled to recover compensation paid the unlicensed contractor <u>if the person receiving the services knew the contractor was unlicensed</u>. By a parity of reasoning from the state of the law respecting Section 7031(a), knowledge of the status of an unlicensed contractor is irrelevant to the <u>recovery of compensation</u> from the unlicensed contractor. California courts have unmistakably ruled that in any action by an unlicensed contractor to recover for the value of a contractor's services . . . , the unlicensed contractor cannot recover money <u>even if the person for whom the work was performed knew the contractor was unlicensed. [Citations.]</u> [¶] AB No. 678 constitutes an additional and consistent legislative determination that such deterrence can best be realized by compelling violators to return all compensation received from providing their unlicensed services. . . . That policy is furthered in AB No. 678 by specifically recognizing the capacity of an owner to recover money already paid an unlicensed contractor, *even if the person knew the contractor was unlicensed.*' " (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 678 (2001–2002 Reg. Sess.) as introduced Feb. 22, 2001, p. 3, original underscoring, italics added.) The Assembly Judiciary Committee analysis further noted that recovery will be allowed even if the unlicensed contractor argues that the person seeking reimbursement has " 'unclean hands' " based on his or her prior knowledge of the unlicensed status. (*Id.* at p. 4.)

■ Under section 7031(b), a party is entitled to reimbursement for amounts paid to an unlicensed contractor even if the party knew the contractor was unlicensed. Thus, we reject Cesar's Designs's contention that its equitable defenses (unclean hands, estoppel, unjust enrichment) were viable based on the evidence of Alatriste's prior knowledge of its unlicensed contractor status.

### B. *Compensation for Work After Licensing Obtained*

Cesar's Designs next contends the court erred in granting summary adjudication on the entire claimed amount ($57,500) because $11,968 of this amount reflected payment for work after Cesar's Designs obtained a California landscape contractor's license. This contention is without merit. As explained below, section 7031(b) provides a reimbursement right for all amounts paid to an unlicensed contractor if the contractor was unlicensed at any time during the performance, unless the statutory substantial compliance rules are met. In this case, there was no showing the substantial compliance rules were satisfied.

Courts interpreting section *7031(a)* have long held that a contractor "is ineligible to recover *any* compensation under the terms of that statute, if, *at any time* during performance of an agreement for contractor services, he or she was not duly licensed." (*MW Erectors, supra*, 36 Cal.4th at p. 425.) In *MW Erectors*, the California Supreme Court reaffirmed this "well-entrenched case law" and applied the rule to hold that the plaintiff subcontractor could not recover compensation for any completed work because it began the work before it obtained a license, even though it was licensed during much of the remaining portions of the project. (*Id.* at pp. 425–431, 434.)

A Court of Appeal recently applied this same rule in an action for reimbursement brought under section *7031(b)*. (*Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845 [79 Cal.Rptr.3d 603].) In *Goldstein*, the homeowners brought an action under section 7031(b) seeking reimbursement of $362,660.50 against a contractor who was unlicensed when he began the home remodel project, but then obtained a license several months later while he was still working on the project. (*Goldstein, supra*, at pp. 849–850.) Before trial, the homeowners applied for a right to attach order, which requires a showing of " 'the probable validity of the claim upon which the attachment is based.' " (*Id.* at p. 852.) In opposing the application, the contractor raised several arguments, including that the amount of the claimed attachment was excessive because he was entitled to an offset for work performed *after he obtained his license*. (*Id.* at p. 855.) Relying on *MW Erectors*, the court summarily rejected the argument and concluded that "[a]ny postlicense work may not be set off against [the homeowners'] potential recovery." (*Goldstein*, at p. 855.)

We agree with the *Goldstein* court's conclusion. As noted, the Legislature enacted section 7031(b) to disapprove of the decisions recognizing a distinction between a contractor's affirmative and defensive (offset) claims, and to ensure that the rules pertaining to an unlicensed contractor's compensation rights were consistent regardless whether the contractor is suing or the

contractor is being sued. (See *White, supra,* 178 Cal.App.4th at pp. 519–520.) When the Legislature enacted section 7031(b), courts had long held that a contractor was not entitled to any compensation for any work performed unless the contractor was licensed during the entire project (absent a showing of statutory substantial compliance). (*MW Erectors, supra,* 36 Cal.4th at p. 425.) The Legislature is presumed to be aware of existing laws and judicial decisions interpreting those laws when it enacts legislation. (*Voss v. Superior Court* (1996) 46 Cal.App.4th 900, 925 [54 Cal.Rptr.2d 225].) Thus, if the Legislature had intended a different result in section 7031(b) with respect to the issue of whether a contractor may offset a recovery for work performed with a license, it would have said so. Instead, section 7031(b) broadly reads that "a person who utilizes the services of an unlicensed contractor may bring an action . . . to recover *all compensation paid* to the unlicensed contractor *for performance of any act or contract.*" (Italics added.)

Cesar's Designs argues that the Legislature must have intended a different result in section 7031(b) because it used different language in the two subdivisions. Specifically, section 7031(a) states a contractor may not bring an action for compensation unless the contractor alleges that he or she was a "duly licensed contractor *at all times during the performance of that act or contract,*" whereas the Legislature did not use this "at all times" phrase in section 7031(b). (Italics added.) This argument is unpersuasive.

■ A court may reasonably infer from the Legislature's use of different language in statutory provisions that the Legislature intended a different meaning in each statute. (*Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 399 [44 Cal.Rptr.3d 348].) However, this rule is not to be applied rigidly and without considering the entire context of the legislation. "[S]tatutory interpretation is not conducted in a vacuum, and the factual context of a particular dispute will give shape to the application of statutory construction principles." (*Party City Corp. v. Superior Court* (2008) 169 Cal.App.4th 497, 521 [86 Cal.Rptr.3d 721].)

In this case, the fact that the Legislature used different language in the two subdivisions does not mean the Legislature intended a different result. The Legislature included the phrase "at all times" in section 7031(a) to clarify the pleading and proof requirement for a contractor to recover on an affirmative claim against a party utilizing its services. However, with respect to section 7031(b), the Legislature was addressing the hiring party's right to recover compensation paid to an unlicensed contractor. In this situation, there was no need for the Legislature to require the plaintiff to allege when the contractor was unlicensed or that the contractor was unlicensed "at all times." The statutory language providing that the party is entitled to recover "*all* compensation paid to the unlicensed contractor for performance of *any* act or

contract" was sufficient to reflect the legislative intent to permit full reimbursement regardless of a contractor's subsequent license status. (§ 7031(b), italics added.) "The Legislature is not required to use the same language to accomplish the same ends." (*Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 783 [74 Cal.Rptr.3d 690].)

This interpretation of section 7031(b) has been recognized by the California Supreme Court. (*MW Erectors, supra*, 36 Cal.4th at p. 429, fn. 8.) Although *MW Erectors* concerned an action by a contractor to recover unpaid compensation under section 7031(a), the court discussed section 7031(b)'s legislative history in a lengthy footnote, and its comments reflect an understanding that section 7031(b) applies to allow a full reimbursement even if the contractor obtained a license after he or she began performing the work. (*MW Erectors, supra*, at p. 429, fn. 8.) Specifically, the high court noted that when section 7031(b) was first enacted, it did not expressly include a substantial compliance defense but, in 2003, the Legislature amended section 7031(b) "to provide explicitly that contractors may defend disgorgement suits by asserting substantial compliance. Legislative analyses explained that the defense was deemed necessary because '[c]urrently, a lapse of license for *even a single day* could lead to the owner's recovery of *100 percent* of the compensation paid to the contractor for work performed.' [Citations.] It was also noted [by the legislative committee analyses] that the 2003 bill was 'similar, but not identical, to [a prior 2001–2002 Assembly bill], which was rejected by [the Senate Judiciary Committee in 2002]. Among other things, [this prior rejected Assembly bill] sought to limit the consumer's recovery to the amount paid *during the time the contractor was unlicensed* . . . . When [that] bill was heard, Committee members expressed concern that the bill *would go too far* in benefiting unlicensed contractors . . . .' [Citation.]" (*MW Erectors, supra*, at p. 429, fn. 8, first italics added.)

■ Thus, as noted by *MW Erectors*, in amending section 7031 two years after enacting section 7031(b), the Legislature expressed an understanding that (1) without a substantial compliance defense a contractor would be required to disgorge all of its compensation even if it was unlicensed for only one day of the work; and (2) the Legislature had been unwilling to establish an exception that would allow reimbursement only for the period of time when a contractor was unlicensed. (See *MW Erectors, supra*, 36 Cal.4th at p. 429, fn. 8.) Although a legislative expression of a prior intent is not binding upon the courts, the expression is a relevant factor in the analysis. (*Id.* at p. 434; *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922 [44 Cal.Rptr.3d 223, 135 P.3d 637]; *Eu v. Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289].) Additionally, at the same time it added the substantial compliance defense to section 7031(b), the Legislature reconfirmed that the defense was inapplicable if the contractor had never been licensed. (See *MW Erectors, supra*, 36 Cal.4th at pp. 433–434.)

 This legislative history, together with the broad statutory language and the circumstances showing that the Legislature intended that section 7031(b) be a mirror image of section 7031(a), convinces us that section 7031(b) does not permit an offset for work performed after a license is obtained, unless the statutory substantial compliance rule applies (§ 7031(e)). It is undisputed that the substantial compliance rule does not apply in this case.

 Cesar's Designs argues at length that because the sword provision (§ 7031(b)) creates more opportunities for a homeowner to take unfair advantage of an unlicensed contractor than the shield provision (§ 7031(a)), the provisions should be interpreted differently on the issue of whether partial recovery is allowed if the contractor became licensed during the performance of the work. In asserting these arguments, Cesar's Designs is essentially asking this court to evaluate the wisdom of the Legislature's policy determination. This is not our proper role. Our function is to ascertain and give effect to legislative intent, and "not to determine whether the Legislature's policy choices were right or wrong." (*County of Orange v. Superior Court* (2007) 155 Cal.App.4th 1253, 1262 [66 Cal.Rptr.3d 689].) Courts may not evaluate the desirability of the policies embodied in legislation. " '[T]he choice among competing policy considerations in enacting laws is a legislative function.' " (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 25 [30 Cal.Rptr.3d 30, 113 P.3d 1062].)

## C. *Compensation Paid for Materials*

Cesar's Designs next argues the court erred in applying section 7031(b) to allow Alatriste to obtain reimbursement for amounts paid for materials used in the project ($20,045.16).

 The *White* court rejected the identical argument. (*White, supra*, 178 Cal.App.4th at pp. 520–521.) Construing section 7031(b)'s language, the *White* court stated that "the authorization of recovery of '*all* compensation paid to the unlicensed contractor for performance of any act or contract' [citation] means that unlicensed contractors are required to return all compensation received without reductions or offsets for the value of material or services provided." (*White, supra*, at pp. 520–521.) The court reasoned that this "interpretation . . . is consistent with the usual meaning of the word 'all,' which signifies the whole number and does not admit of an exception or exclusion not specified. [Citation.] In short, 'all compensation paid' does not mean all compensation less reductions for offsets. [¶] Our use of the plain and usual meaning of the word 'all' is consistent with the reference to offsets in the legislative [history] as well as the statement [in the Assembly Judiciary Committee analysis] that 'deterrence can best be realized by compelling

violators to return all compensation received from providing their unlicensed services.' [Citation.] If reductions for offset were allowed, deterrence of unlicensed work would be diminished." (*Id.* at p. 521.)

We agree with this analysis and reach the same result in this case. In support of a contrary argument, Cesar's Designs cites only to *Harrison v. Shamalian* (1952) 110 Cal.App.2d 500 [243 P.2d 82]. However, because that decision predates section 7031(b), it is not helpful to our analysis.

Cesar's Designs contends that allowing Alatriste to obtain reimbursement for materials that remain in his possession is unfair and "serves no purpose other than punishment." As noted, the legislative committee reports show that, in enacting section 7031(b), the Legislature was specifically aware that permitting reimbursement may result in harsh and unfair results to an individual contractor and could result in unjust enrichment to a homeowner, but nonetheless decided that the rule was essential to effectuate the important public policy of deterring licensing violations and ensuring that all contractors are licensed. As a judicial body, we are not permitted to second-guess these policy choices.

### D. *Fraud*

Cesar's Designs next contends that fraud is a valid defense to a section 7031(b) action. However, the only facts presented by Cesar's Designs in support of its fraud claim are that Alatriste knew it was unlicensed when Alatriste retained Cesar's Designs to perform the work, and knew that the company president's son was in the process of obtaining a license. As we have noted, the Legislature specifically intended to permit recovery by a party even if the party had knowledge of an unlicensed status. Thus, the fraud defense is unsupported on this record.[6]

Similarly, we reject Cesar's Designs's argument that it should be entitled to defend the action on the basis that Alatriste obtained benefits from his landscaping work. As with section 7031(a), section 7031(b) does not permit a contractor to assert legal or equitable defenses even if the facts show the hiring party knowingly and substantially benefited from the work.

---

[6] In reaching this conclusion, we do not comment on whether a fraud defense under section 7031(b) would be viable under different facts, such as where the plaintiff improperly uses the courts to perpetuate a fraud. (See *MW Erectors, supra*, 36 Cal.4th at p. 424 ["Nothing we say here is intended to authorize or condone abusive manipulation of the courts."].)

## DISPOSITION

Judgment affirmed. Appellant to pay respondent's costs on appeal.

Huffman, Acting P. J., and O'Rourke, J., concurred.