[No. A128543. First Dist., Div. One. Dec. 29, 2010.]

RICHARD SCHOENFELD, Plaintiff and Appellant, v.
BOARD OF PAROLE HEARINGS, Defendant and Respondent.

## COUNSEL

Scott D. Handleman for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca and Brian C. Kinney, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BANKE, J.**—Plaintiff Richard Schoenfeld is currently incarcerated for crimes he committed approximately 35 years ago. On October 30, 2008, the Board of Parole Hearings (Board) found him suitable for parole. On August 14, 2009, at a hearing to calculate his release date under applicable indeterminate sentence law (ISL) regulations, the Board panel stated its disagreement with the 2008 suitability finding and ordered a rescission hearing. It did not calculate an ISL release date. Schoenfeld filed a petition for a writ of ordinary mandamus in superior court challenging the setting of a rescission hearing. He appeals from the judgment denying his petition. As he did below, Schoenfeld contends the 2008 suitability finding was "final" and thus precluded the Board from taking any action on August 14, 2009, other than calculating his ISL release date. He further asserts scheduling a rescission hearing pursuant to current regulations is an ex post facto violation. We affirm the judgment denying his writ petition.

### BACKGROUND

The facts and circumstances of Schoenfeld's crimes are set forth in our opinion affirming his conviction, *People v. Schoenfeld* (1980) 111 Cal.App.3d 671 [168 Cal.Rptr. 762], and we do not recite them again here. Suffice it to say, in 1977, he pled guilty to 27 counts of kidnapping for ransom. He was sentenced to concurrent life terms with a minimum term of six months on each count pursuant to the then existing provisions of the Youthful Offenders Act (Pen. Code, former § 1202b, repealed by Stats. 1976, ch. 1139, § 274, p. 5146, eff. July 1, 1977). (*People v. Schoenfeld, supra*, 111 Cal.App.3d at pp. 674–676 & fn. 3.) Because the crime took place July 15, 1976, Schoenfeld was committed under the ISL sentencing scheme in effect until July 1, 1977.

On October 30, 2008, at his 20th parole consideration hearing, the Board hearing panel found Schoenfeld suitable for parole. Applying regulations applicable to life prisoners sentenced under the determinate sentencing law (DSL) (Cal. Code Regs., tit. 15, §§ 2282–2290), the panel calculated his term to be over 187 years.

Pursuant to Penal Code section 3041, subdivision (b),[1] the hearing panel's finding and decision was not "final" for 120 days. (§ 3041, subd. (b).) During that period of time, the Board could choose to review the panel's decision. (§ 3041, subd. (b).) On March 10, 2009, the Board notified Schoenfeld it approved the panel's suitability finding.

The Board then set a hearing pursuant to *In re Stanworth* (1982) 33 Cal.3d 176 [187 Cal.Rptr. 783, 654 P.2d 1311], to determine Schoenfeld's term under the ISL, which, if shorter than the term calculated under the DSL, would take precedence. The ISL hearing was initially set for June 2009, but then rescheduled to August 14, 2009.

At the outset of the August 14 hearing, the Board panel members refused to allow Schoenfeld's attorney to participate on the ground that under Board rules in effect at the time Schoenfeld was sentenced under the ISL, inmates had no right to be represented by counsel at a term setting hearing.[2] However, rather than proceeding with the scheduled task of determining Schoenfeld's ISL term, the panel stated it had reviewed the record of the 2008 parole hearing and concluded it "was unclear whether the granting panel fully considered [Schoenfeld's] current mental state or [his] attitude toward the crime as it relates to [his] remorse, institutional adjustment, and insight into the causes and conditions of the commitment offense so as to insure that [he] no longer pose[d] a current risk of danger if released to society." The panel stated it "found that the grant on October the 30th of 2008, may be an improvident grant based upon fundamental errors or omissions of fact, and as such, the Panel is ordering that a rescission hearing be conducted, should be conducted pursuant to the Code of Regulations Title 15, 2450 and 2451(c)." It issued a written order, noting its decision to order a rescission hearing was "subject to decision review pursuant to 15, § 2041(f)."

Five days later, the Board's central office scheduled a rescission hearing for January 26, 2010. There have since been numerous postponements and no hearing has yet been held.·

On December 7, 2009, Schoenfeld filed a petition for writ of mandamus in the San Luis Obispo County Superior Court (he is incarcerated at the San

---

[1] All further statutory citations are to the Penal Code unless otherwise stated.

[2] Schoenfeld does not challenge this ruling.

Luis Obispo California Men's Colony) seeking a stay of the rescission hearing and a writ ordering the Board to cancel it. On January 14, 2010, the San Luis Obispo Superior Court transferred the matter to Alameda County Superior Court. In March, Schoenfeld filed a motion for a preliminary injunction to enjoin the rescission hearing. On April 12, 2010, the trial court denied his motion and petition for writ of mandate on two grounds: (1) Schoenfeld impermissibly sought writ relief in connection with an exercise of administrative discretion and (2) the Board had authority to schedule a rescission hearing. Schoenfeld filed a timely notice of appeal.[3]

## DISCUSSION

### A. *The Board Has Authority to Schedule a Rescission Hearing*

■ Schoenfeld contends the amendments made in 2001 to section 3041 constrain the authority of the Board to hold a rescission hearing following a grant of parole. Specifically, Schoenfeld asserts the amendments to subdivision (b), specifying that a parole decision "shall become final within 120 days of the date of the [parole] hearing" (§ 3041, subd. (b)), preclude scheduling a rescission hearing to determine whether "fundamental errors" were made by the granting panel after the Board has expressly approved the grant of parole. Schoenfeld reasons that since the Board's review of a granting panel's decision encompasses determining whether the panel "made an error of law" or "an error of fact" or "new information should be presented to the board," the Board cannot, in the face of the statute's "finality" provision, hold a rescission hearing to determine whether the granting panel made "fundamental errors" warranting further review. The Attorney General maintains the amendments to section 3041, subdivision (b), refine the process for the initial "review" of panel decisions by the Board and do not in any way affect the well-established "rescission" authority of the Board. We agree with the Attorney General.[4]

■ The courts have long recognized the "rescission" power of the Board, as separate and distinct from its authority to initially grant or deny parole.

---

[3] In a separate original writ proceeding filed in this court (*In re Schoenfeld* (Aug. 4, 2010, A127680) [nonpub. opn.]), Schoenfeld asserted the Board hearing panel should have proceeded to determine his ISL sentence when it found him suitable for parole and set his DSL release date. We agreed and issued a peremptory writ. The instant mandamus proceeding before us on appeal does not embrace the issue of determining Schoenfeld's ISL release date. The Attorney General also acknowledges this issue is now moot since the Board has set an ISL release date.

[4] The Attorney General preliminarily contends Schoenfeld improperly seeks writ relief. Not so. Schoenfeld does not seek a writ controlling the manner in which the Board exercises its discretion. Rather, he contends that as a matter of law, the Board has no authority to hold a rescission hearing and thus is acting contrary to the law—a challenge properly made by a petition for writ of ordinary mandamus. (Code Civ. Proc., § 1085.)

(See *In re Powell* (1988) 45 Cal.3d 894, 901–902 [248 Cal.Rptr. 431, 755 P.2d 881] (*Powell*); *In re Caswell* (2001) 92 Cal.App.4th 1017, 1026 [112 Cal.Rptr.2d 462] (*Caswell*); *In re Johnson* (1995) 35 Cal.App.4th 160, 168–169 [41 Cal.Rptr.2d 449] (*Johnson*); *In re Fain* (1976) 65 Cal.App.3d 376, 388–393 [135 Cal.Rptr. 543]; *McQuillion v. Duncan* (2002) 306 F.3d 895, 898–899, 904–906.) As Division Two of this court observed in *In re Fain* (1983) 145 Cal.App.3d 540, 546 [193 Cal.Rptr. 483], the "rescission" authority of the Board is expressly recognized in the two statutes which *follow* section 3041, specifically sections 3041.5 and 3041.7. (§§ 3041.5, subd. (a), 3041.7.)

" 'Cause' for rescission includes conduct enumerated in section 2451 of title 15 of the California Code of Regulations . . . ." (*Caswell, supra,* 92 Cal.App.4th at p. 1026.) However, cause for rescission "is not restricted to those matters enumerated in" the regulations. (*Ibid.*) "Because the Board is afforded great discretion in parole decisions, 'cause' includes a determination by the Board that parole was improvidently granted under the circumstances appearing at the time of the grant of parole or at a later time. (*Powell, supra,* 45 Cal.3d at p. 902; *Johnson, supra,* [35 Cal.App.4th] at p. 168; [*In re*] *Fain, supra,* [65 Cal.App.3d] at p. 394.) Thus, it has been held, parole may be rescinded if the granting panel failed to adequately consider the gravity of the prisoner's convictions. (*Johnson, supra,* at pp. 168–169.)" (*Id.* at pp. 1026–1027.)

■ However, "a rescission may not be upheld merely because the Board has mouthed words that have been held to constitute 'cause' for rescission. There must also be an adequate *'factual underpinning* for the Board's determination of cause.' (*Johnson, supra,* 35 Cal.App.4th at p. 169, italics added.)" (*Caswell, supra,* 92 Cal.App.4th at p. 1027.) Nor can a rescission panel find "good cause" solely because "reasonable minds could differ" as to whether parole should have been granted by the parole panel. (*Id.* at pp. 1026–1029.) Rather, "[i]n reviewing a rescission of parole based on the granting panel's failure to adequately consider the gravity of the offenses, the proper focus is on the findings and conclusions that were central to the original panel's ultimate decision to grant parole. When these findings or conclusions cannot be reconciled with the evidence before the granting panel, or when the granting panel misstated facts or explicitly declined to consider information germane to the gravity of the crimes, it can fairly be said that reasonable minds could differ on whether the panel gave adequate consideration to the severity of the crimes. In those instances, 'some evidence' of the panel's failure to adequately consider the gravity of the prisoner's offense(s) would exist, thereby justifying rescission of the parole release date. (Cf. Cal. Code Regs., tit. 15, § 2451, subd. (c) [rescission hearing (and rescission) warranted for '[f]undamental errors' by granting panel].)" (*Caswell, supra,* at p. 1029.)

Schoenfeld contends this established law was fundamentally altered by the 2001 amendments to section 3041, subdivision (b). These amendments added the following provisions to the statute: "After the effective date of this subdivision, any decision of the parole panel finding an inmate suitable for parole shall become final within 120 days of the date of the hearing. During that period, the board may review the panel's decision. The panel's decision shall become final pursuant to this subdivision unless the board finds that the panel made an error of law, or that the panel's decision was based on an error of fact, or that new information should be presented to the board, any of which when corrected or considered by the board has a substantial likelihood of resulting in a substantially different decision upon a rehearing. In making this determination, the board shall consult with the commissioners who conducted the parole consideration hearing. No decision of the parole panel shall be disapproved and referred for rehearing except by a majority vote of the board, sitting en banc, following a public meeting."[5] (§ 3041, subd. (b).)

Notably absent from this language is any reference either to the Board's well-established and long-recognized "rescission" authority, or to "rescission" hearings which are expressly referenced in the two statutes that follow, sections 3041.5, subdivision (a) and 3041.7. We must presume, of course, that the Legislature was well aware of the statutory provisions recognizing, and the extensive case law addressing, the Board's "rescission" power. (See *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 670 [108 Cal.Rptr.3d 277] (*Alatriste*).) Had the Legislature intended to significantly alter this authority by amending section 3041, subdivision (b)—as Schoenfeld claims—it surely would have said so. (*Alatriste, supra*, at p. 670.)

Schoenfeld points to the legislative history of the 2001 amendments to section 3041, subdivision (b). There is no question this history makes clear the Legislature amended the statute in the face of a crushing prison population and to address the huge backlog in holding parole hearings. Prior to the amendments, any person on a parole hearing panel could request review of a panel decision by the Board. The Board, in turn, was transferring the decisions for review by a different panel. Moreover, in the course of a review, the granting panel was never consulted. But, again, what is significantly absent from the legislative history is any discussion of the Board's well-established "rescission" authority and the extensive case law discussing that authority. Again, if the Legislature intended to significantly circumscribe the

---

[5] As the Attorney General points out, the decision review process was previously set forth in sections 2041 to 2043 of title 15 of the California Code of Regulations. The 2001 amendment to section 3041 placed the decision review process within the Penal Code, limiting the grounds upon which the Board could disapprove a panel decision, and enacting a number of procedural protections. But the 2001 amendment left intact California Code of Regulations, title 15, section 2451, one of the regulations governing rescission.

Board's "rescission" authority and this extensive body of case law, we are confident some mention of it would appear in the legislative history.

We understand Schoenfeld's argument that if section 3041, subdivision (b), does not circumscribe the Board's "rescission" authority, the new "finality" provisions can be readily circumvented through the "rescission" hearing process. This is a matter of concern. In *In re Fain*, however, Division Four of this court rejected a similar "finality" argument. (*In re Fain, supra*, 65 Cal.App.3d at pp. 388–391.) At that time, a case-hearing representative's recommendation of parole became "final" upon countersigning by an Adult Authority member. (*Id.* at p. 384.) The court rejected the argument that this "finality" precluded a subsequent "rescission" hearing—the parole decision did not become "so terminally 'final,' once it had been recommended and approved . . . that the Adult Authority subsequently lost its inherent power to reconsider the action in the sense that its jurisdiction had lapsed." (*Id.* at p. 391.) Again, there is nothing in either the language of the 2001 amendments, or in the legislative history, indicating the Legislature intended to trifle with the Board's *fundamental* jurisdiction to reconsider parole decisions.

In short, Schoenfeld is asking this court to read into the 2001 amendments language which the Legislature did not include and which would effect a significant constriction of the existing law. Such a request must be directed to the Legislature, not the courts. (See Code Civ. Proc., § 1858 [court's role is "simply to ascertain and declare" what is in statute, "not to insert what has been omitted, or to omit what has been inserted"]; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

B. *Application of California Code of Regulations, Title 15, Section 2451, Subdivision (c).*

Schoenfeld contends the Board relied on section 2451, subdivision (c) of title 15 of the California Code of Regulations as the basis for ordering a rescission hearing, and because this regulation was enacted after he committed his crime, its application to him violates ex post facto principles. However, as we have discussed, cause for rescission has never been restricted to the factors enumerated in the regulations. (See *Caswell, supra*, 92 Cal.App.4th 1026; *In re Fain, supra*, 65 Cal.App.3d at pp. 393–394.) The Board has always had the authority it exercised in this case. Accordingly, Schoenfeld's ex post facto argument fails.

## CONCLUSION

The judgment of the superior court denying Schoenfeld's petition for writ of mandate is affirmed.[6]

Margulies, Acting P. J., and Dondero, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 11, 2011, S190822.

---

[6] Nothing in our decision today prevents Schoenfeld from challenging the Board's grounds for the recommended rescission at the scheduled hearing.