Filed 8/18/15; pub order 9/15/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFF TRACY, INC., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> CITY OF PICO RIVERA, <br><br>     Defendant and Respondent. | B258563 <br> (c/w B258648) <br><br> (Los Angeles County <br> Super. Ct. No. VC063151) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Thomas I. McKnew, Jr., Judge. Reversed.

John L. Dodd & Associates, John L. Dodd, Benjamin Ekenes; and Darryl J. Paul for Plaintiff and Appellant.

Call & Jensen, Wayne W. Call and Todd C. Bouton for Defendant and Respondent.

_____

This appeal follows a bench trial in which the trial court found that a general contractor, appellant Jeff Tracy, Inc. doing business as Land Forms Construction (Land Forms), did not have a valid license while performing work on a project for respondent City of Pico Rivera (the City). The court thus ordered Land Forms to disgorge all compensation paid to it by the City—the amount of $5,487,370.05. Land Forms contends the judgment must be reversed because the trial court improperly denied it a jury trial on the issues of whether it had a valid license and the amount of disgorgement. We agree that Land Forms was entitled to a jury trial on these issues, and therefore reverse the judgment. However, we find that Land Forms is not entitled to any apportionment as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Bid and Contract

In 2011, the City bid out a public works project for the renovation of a city park known as Rivera Park (the Project). The renovation included landscaping, irrigation, and the construction of baseball fields, bleachers, a backstop, a children's playground, and electrical and concession buildings. The "Notice Inviting Bids" for the Project specified that "Each bidder shall possess at the time this contact is awarded a Class 'A' license (General Engineering), pursuant to Public Contract Code Section 3300." Land Forms submitted a bid, stating that it had a class A license and a class C-27 license (general landscaping).

Land Forms was awarded the contract for the Project. The City eventually paid Land Forms $5,487,370.05 over the course of the Project.

### The FAC

On December 18, 2013, Land Forms filed a first amended complaint (FAC) against the City alleging a single cause of action for breach of contract. Land Forms alleged that the City improperly withheld $518,154.73 in liquidated damages. Land Forms sought general damages "in excess of $1,000,000."

The City filed an answer, including a general denial.

2

**The Cross-Complaint**

On April 30, 2014, about a month before an estimated 25-day jury trial was scheduled, the City filed a motion for leave to file a cross-complaint seeking disgorgement of all the money it had paid to Land Forms pursuant to Business and Professions Code section 7031, subdivision (b),[1] on the ground that recent information revealed Land Forms had "used a sham Responsible Managing Employee ('RME'), James Nale, to obtain a Class A license for the park project that the City contracted with Land Forms to complete . . . , and that this sham RME, who was never a bona fide employee of Land Forms, failed to supervise the Project and to be actively involved in Land Forms' business such that Land Forms' Class A license was void and invalid."

The trial court granted the motion five days before trial. Land Forms declined to continue the trial and filed an answer to the cross-complaint.

**Bench Trial—Phase One**

In its trial brief, the City urged the trial court to proceed by holding a bench trial on the issue of the validity of Land Forms' class A license, since resolution of the issue would be dispositive on both Land Forms' FAC and the City's cross-complaint. Land Forms objected, insisting it had a right to a jury trial. Pursuant to Code of Civil Procedure section 597, the trial court held a bench trial on May 29 and 30, 2014, on the issue of whether Land Forms held a valid class A license during the Project.

The City presented documentary evidence and witness testimony. The City's evidence showed that Land Forms obtained a class A license from the Contractors' State License Board based on the representations in both its initial application and renewal application for the license that James Nale, who held a class A license, was acting as the RME for Land Forms. The applications were signed under penalty of perjury by Mr. Nale and Mr. Jeff Tracy (Chief Executive Officer of Land Forms).

Mr. Nale, however, testified that he was never an employee of Land Forms. He was supposed to have been designated instead as a Responsible Managing Officer

---

[1]    All further statutory references are to the Business and Professions Code unless otherwise indicated.

3

(RMO). He received stock worth 20 percent of Land Forms, but this stock had to be returned upon demand. He was paid by check $2,500 per month, which was eventually reduced to $1,000 per month. He could not recall if the checks were on Land Forms' bank account. No taxes were withheld from the money he received, he was not aware of any payroll records regarding his pay, and he never received 1099 or W-2 forms from Land Forms. Land Forms never provided him with an office, computer, e-mail address or business cards. He never saw the Project plans. He visited the Project site three times. He could not name a single subcontractor on the Project. He did not know if the Project had a superintendent. And he could not recall giving any direction or advice to Land Forms as to what needed to be done on the Project.

At the close of evidence, the trial court ruled in favor of the City. In its statement of decision, the court set forth numerous reasons for its conclusions that "James Nale was neither a Responsible Managing Officer, nor a Responsible Managing Employee" of Land Forms during its work on the Project, and that Land Forms had failed to carry its burden of proving that it was duly licensed with a valid class A license. The court also concluded that Land Forms had not demonstrated substantial compliance with the licensing requirements under section 7031, subdivision (e). Accordingly, Land Forms was barred from bringing its breach of contract claim against the City and was required to disgorge all compensation the City paid Land Forms for work on the Project.

**Bench Trial—Phase Two**

After Phase One, the trial court noted that an issue remained regarding the amount of disgorgement, which had not been put into evidence. Although Land Forms had not previously contested the amount paid by the City, it refused to stipulate to any amount. It also argued for the first time that the trial court should make an apportionment of (or reduction in) the disgorgement amount for any portion of the work on the Project that Land Forms could have properly performed using only its C-27 landscaping license. Land Forms demanded a jury trial on these issues, which the court refused. The court asked for further briefing and set a briefing schedule.

4

The City filed a Motion to Determine Amount of Disgorgement, which established that Land Forms had already admitted in verified discovery responses that the City had paid Land Forms $5,487,370.05 for work on the Project.  The City also argued that there could be no apportionment as a matter of law.  Land Forms filed an opposition, but presented no evidence to dispute the amount it had already acknowledged receiving from the City.

Before Phase Two of the evidentiary hearing could proceed, Land Forms filed a petition for writ of mandate to grant it a jury trial on the licensing issues that had already been decided and requested a stay of all proceedings in the trial court.  On June 18, 2014, we stayed proceedings in the trial court until further order.  On July 15, 2014, we denied Land Forms' petition for a writ of mandate and dissolved the stay.  The next day, Land Forms filed a petition for review with the California Supreme Court and requested another stay.  The California Supreme Court denied the petition and the stay request.  Phase Two of the evidentiary hearing/bench trial was reset for August 20, 2014.

On August 20, 2014, the City introduced further documentation establishing the amount of compensation it had paid to Land Forms for its work on the Project, and also introduced contract documents showing that the City required the contractor for the project to have a class A license.  This evidence was uncontested.

After hearing the evidence and argument from the parties, the trial court entered a judgment in the City's favor against Land Forms.  The judgment stated that Land Forms would take nothing on the FAC, which was dismissed in its entirety and with prejudice, and awarded the City the amount of $5,487,370.05 as disgorgement.  Land Forms filed this appeal.

**DISCUSSION**

Land Forms contends that the trial court abused its discretion in denying it a jury trial, and instead holding a bench trial, on the issues of whether Land Forms held a valid class A license during its work on the Project and the amount of disgorgement.

## I. Standard of Review

A trial court abuses its discretion when it "'exceeds the bounds of reason'" after considering all the circumstances before it. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566. A trial court therefore abuses its discretion when it transgress the confines of the applicable principles of law. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.) "'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . .'"" (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) "If the trial court is mistaken about the scope of its discretion, the mistaken position may be 'reasonable', i.e., one as to which reasonable judges could differ. [Citation.] But if the trial court acts in accord with its mistaken view the action is nonetheless error; it is wrong on the law." (*Id.* at pp. 1297–1298.)

## II. Validity of License

The trial court denied Land Forms' request for a jury trial on the issue of whether it held a valid class A license, and instead conducted a bench trial on the issue, pursuant to Code of Civil Procedure section 597. This statute provides in part: "When the answer . . . sets up any other defense not involving the merits of the plaintiff's cause of action but constituting a bar or ground of abatement to the prosecution thereof, the court may, either upon its own motion or upon the motion of any party, proceed to the trial of the special defense or defenses before the trial of any other issue in the case, and if the decision of the court, or the verdict of the jury, upon any special defense so tried . . . is in favor of the defendant pleading the same, judgment for the defendant shall thereupon be entered and no trial of other issues in the action shall be had unless that judgment shall be reversed on appeal or otherwise set aside or vacated." (Code Civ. Proc., § 597.)

6

Land Forms argues that Code of Civil Procedure section 597 does not apply here because "licensure is not a 'special defense,' but is a required element of a contractor plaintiff's case in chief." We agree.

By statute, a contractor seeking damages must allege and prove it held a valid license before it can prosecute any claim for damages. Section 7031, subdivision (a) states: "Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter *without alleging that he or she was a duly licensed contractor* at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, …" (Italics added.) Section 7031, subdivision (d) places the burden of proof on the contractor: "When licensure or proper licensure is controverted, the burden of proof to establish licensure or proper licensure shall be on the licensee." (§ 7031, subd. (d); see also *Advantec Group, Inc. v. Edwi's Plumbing Co., Inc*. (2007) 153 Cal.App.4th 621, 626–630 [contractor's license is by statute an element of contractor's claim for compensation, and thus defendant's general denial put proper licensing at issue, without the need to assert it as an affirmative defense].)[2]

Accordingly, by finding the issue of licensure to be a special defense rather than an element of Land Forms' breach of contract claim, the trial court abused its discretion

---

[2]     It is well established that the right to a jury trial is the same today as it existed at common law in 1850, when the Constitution was adopted. Because a plaintiff had a common law right to jury trial for a breach of contract cause, so too does such a right exist today. (*Ceriale v. Superior Court* (1996) 48 Cal.App.4th 1629, 1634.) The current legislative requirement that a contractor plaintiff must, in addition to proving the traditional elements of a contract claim, also prove that it was duly licensed at all times during the performance of the contract does not change this historical right to a jury trial. To the contrary, "'Any act of the Legislature attempting to abridge the constitutional right is void.'" (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286–287, fn. omitted.)

in relying on Code of Civil Procedure section 597 to deny Land Forms a jury trial on this issue.

This conclusion is buttressed by the fact that, here, the determination of whether Land Forms' held a valid class A license involved questions of fact. "[W]here there is a conflict in the evidence from which either conclusion could be reached as to the status of the parties, the question must be submitted to the jury. [Citations.] This rule is clearly applicable to cases revolving around the disputed right of a party to bring suit under the provisions of Business and Professions Code section 7031." (*Dahl-Beck Electric Co. v. Rogge* (1969) 275 Cal.App.2d 893, 900.)

In most cases, a contractor can establish valid licensure by simply producing "a verified certificate of licensure from the Contractors' State License Board which establishes that the individual or entity bringing the action was duly licensed in the proper classification of contractors at all times during the performance of any act or contract covered by the action." (§ 7031, subd. (d).) Land Forms concedes that if this was the only evidence at issue, "then—perhaps—the issue could be decided by the court without a jury." But as Land Forms points out, the City was challenging Land Forms' license by going behind the face of the license to prove that James Nale was a sham RME or RMO. (See *Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 385 ["It *is* possible for a party in a civil action to attack a contractor's license by going behind the face of the license and proving that a required RME is a 'sham'"].)

In California, a corporation qualifies for a contractor's license "by the appearance of a responsible managing officer or responsible managing employee who is qualified for the same license classification as the classification being applied for." (§ 7068, subd. (b)(3); see also § 7065, subd. (c)(3) [corporation qualifies for contractor's license "upon the appearance of a qualifying individual appearing either as a responsible managing officer or a responsible managing employee on behalf of the corporation"].) The qualifying individual must be "a bona fide officer or employee of the corporation and must be actively engaged in the work covered by the license. [Citation.] The qualifier must exercise direct supervision over the work for which the license is issued to the

8

extent necessary to secure full compliance with the provisions of the law. (§ 7068.1.)" (*Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1123; § 7068.1, subd. (a) [qualifier "shall be responsible for exercising that direct supervision and control of his or her employer's or principal's construction operations to secure compliance with this chapter and the rules and regulations of the board"].)

A variety of activities can constitute direct supervision and control, including "'one or any combination of the following activities: supervising construction, managing construction activities by making technical and administrative decisions, checking jobs for proper workmanship, or direct supervision on construction job sites.'" (*Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1299, citing Cal. Code Regs., tit. 16, § 823, subd. (b).) All of these are factual questions that should have been submitted to a jury for determination.

The City relies on section 7031, subdivision (e) to argue that the court, and not a jury, should decide the issue of valid licensure. But this section only comes into play after a determination has already been made that a contractor did not have a valid license.

Accordingly, the trial court should have granted Land Forms' request to have a jury determine whether Land Forms held a valid license.

## III. Disgorgement

Land Forms argues that the amount of disgorgement should also have been tried to a jury rather than the trial court.

The City counters that the issue of disgorgement was a matter of law to be decided by the trial court. Specifically, the City asserts that the amount of disgorgement (i.e., the compensation it paid to Land Forms for its work on the project) was undisputed because Land Forms had agreed to the amount in its verified interrogatory responses, and thus there was no need to waste a jury's time on the issue. Rightly or wrongly, Land Forms did not stipulate to the amount paid to it by the City. Because the amount of disgorgement was an element to be proved by the City on its cross-complaint, Land Forms was entitled to require the City to meet its burden of proof on the amount of compensation paid and to have this factual issue decided by a jury. If upon retrial, a jury

9

determines that Land Forms did not have a valid class A license during its work on the project, then it is entitled to have a jury determine the amount of disgorgement, if it so desires.

In reaching this conclusion, we reject Land Forms's argument that a disgorgement action under section 7031, subdivision (b) is not permissible here. Land Forms argues that regardless of whether it had a valid class A license, it was still licensed at all times because it had a valid class C-27 license, and was therefore not an "unlicensed" contractor under section 7031, subdivision (b). This statute provides: "Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract." (§ 7031, subd. (b).) Additionally, section 7031, subdivision (a) provides that a contractor must allege that "he or she was a duly licensed contractor at all times during the performance of that act or contract." And section 7031, subdivision (d) provides that the contractor must prove that it "was duly licensed in the proper classification of contractors at all times during the performance of any act or contract covered by the action." Here, Land Forms was performing under a public works contract that specifically required the general contractor to have a valid class A license at all times during the project. We therefore hold that when a contractor does not have the specific license specified in the contract under which the work is performed, the contractor is "unlicensed" for purposes of section 7031, subdivision (b).

This conclusion comports with public policy. As stated in *Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 942: "The Legislature has determined that ultimate responsibility for construction work must rest with a licensed contractor—in this case, a licensed general engineering contractor—who has demonstrated the requisite competence in the construction business. This policy ensures that all subcontractors and materialmen on a project will be answerable to and directed by someone whose knowledge and experience meet uniform requirements. In addition, this policy protects consumers of the contractor's services by making all persons who are

10

responsible for construction projects subject to the regulatory powers of the CSLB [Contractors' State License Board]."

## IV. Apportionment

Finally, Land Forms contends that the trial court erred in finding as a matter of law that there can be no apportionment or offset in the amount of disgorgement. Specifically, Land Forms argues that it is entitled to have a jury determine which portions of the work were performed under the class C-27 license versus the class A license, because "[i]t is only the 'A' portion of the work . . . which should be subject to disgorgement. Anything Land Forms did itself which would be authorized under its C-27 license and any work completed by a properly-licensed subcontractor must not be subject to disgorgement." We agree with the trial court that section 7031, subdivision (b) does not allow apportionment as a matter of law.

As noted, section 7031, subdivision (b) allows a person who utilizes the services of an unlicensed contractor to bring an action "to recover all compensation paid to the unlicensed contractor for performance of any act or contract." (§ 7031, subd. (b).) This section was added to the Contractors' State License Law (§ 7000 et seq.) in 2001 to provide a "sword" to consumers against unlicensed contractors. (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 519.) Since that time, the word "all" in the statute has been interpreted to mean just that, *all* compensation without any offsets. (See *White v. Cridlebaugh, supra,* 178 Cal.App.4th at pp. 520–521 ["We conclude the authorization of recovery of '*all* compensation paid to the unlicensed contractor for performance of any act or contract' (§ 7031[, subd.] (b), italics added) means that unlicensed contractors are required to return all compensation received without reductions or offsets . . . [¶] Our interpretation . . . is consistent with the usual meaning of the word 'all,' which signifies the whole number and does not admit of an exception or exclusion not specified. [Citation.] In short, 'all compensation paid' does not mean all compensation less reductions for offsets"]; *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 672–673 [same].)

11

"[T]he legislative committee reports show that, in enacting section 7031[, subd.] (b), the Legislature was specifically aware that permitting reimbursement may result in harsh and unfair results to an individual contractor and could result in unjust enrichment . . . , but nonetheless decided that the rule was essential to effectuate the important public policy of deterring licensing violations and ensuring that all contractors are licensed." (*Alatriste v. Cesar's Exterior Designs, Inc., supra,* 183 Cal.App.4th at p. 673.)  This is especially true where, as here, a public works contract is at issue.

Thus, in the event it is determined upon retrial that Land Forms must reimburse the City, Land Forms is not entitled to any apportionment or offsets.

## DISPOSITION

The judgment is reversed.  The parties are to bear their own costs on appeal.


_____, Acting P. J.
                ASHMANN-GERST


We concur:


_____, J.
      CHAVEZ


_____, J.
      HOFFSTADT


12

Filed 9/15/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFF TRACY, INC., | B258563 |
| | (c/w B258648) |
| Plaintiff and Appellant, | |
| | (Los Angeles County |
| v. | Super. Ct. No. VC063151) |
| CITY OF PICO RIVERA, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Respondent. | |

THE COURT:[*]

The opinion in the above-entitled matter filed on August 18, 2015, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

[*]  ASHMANN-GERST, Acting P. J., CHAVEZ, J., HOFFSTADT, J.