Filed 11/16/16

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE , | ) | BR 052772 |
| Plaintiff and Appellant, | ) ) | Airport Trial Court |
| v. | ) ) | No. 5WA23526 |
| MICHAEL KERR WALKER, | ) ) | |
| Defendant and Respondent. | ) ) | **OPINION** |
| | ) | |

APPEAL from an order of the Superior Court of Los Angeles County, Airport Trial Court, Edward B. Moreton, Jr., Judge. Reversed.

Marsha Jones Moutrie, City Attorney, City of Santa Monica, and Yibin Shen and Steven Chang, Deputy City Attorneys, for Plaintiff and Appellant.

Ronald L. Brown, Public Defender of Los Angeles County, Albert J. Menaster, Head Deputy Public Defender, and Ryan Wolfe and Nick Stewart-Oaten, Deputy Public Defenders, for Defendant and Respondent.

\*          \*          \*

1

INTRODUCTION

Defendant Michael Kerr Walker pled no contest to contracting without a state contractor's license (Bus. & Prof. Code, § 7028, subd. (a)), and a hearing was conducted to determine the amount of restitution defendant would be ordered to pay to the homeowner with whom he contracted as a condition of probation. The People of the State of California appeal the restitution order, and as discussed below, we reverse.

Pursuant to Business and Professions Code section 7031, subdivisions (a) and (b), defendant could not sue for payment of his unlicensed work, and the homeowner had the right to bring a civil action to recover all sums paid to him. While the statute is not directly applicable because we are dealing with a criminal case, the impact of the statute means, in practical terms, that the homeowner parted with her money in a situation where she did not have to do so. Thus, even if the work performed by defendant bestowed a benefit to the homeowner, she nonetheless incurred an economic loss for purposes of her constitutional and statutory right to restitution (see Cal. Const., art. I, § 28, subd. (a), Pen. Code, § 1202.4, subd. (a)(1)) in the amount of all monies paid to him for his unlicensed work. In addition, the homeowner was entitled to restitution of attorney fees incurred in defending against defendant's civil action for unpaid compensation and in prosecuting her counterclaim to recover the money she paid defendant under the contract. (See Pen. Code, § 1202.4, subd. (f)(3)(H).)

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged in a complaint with seven misdemeanor counts. Contracting and advertising in the capacity of a contractor without a license, requiring an excessive down payment, misrepresenting a contractor's license number, and displaying or representing a license not issued to the party. (Bus. & Prof. Code, §§ 7027.1, subd. (a), 7159.5, subd. (a)(3), 7027.3, 119, subd. (c), respectively). In addition, defendant was charged with failing to obtain worker's compensation insurance (Lab. Code, § 3700.5, subd. (a)) and engaging in business without a city license (Santa Monica Mun. Code, § 6.04.070). Pursuant to a plea agreement, defendant pled no contest to contracting without a license, the remaining charges were dismissed, and he was ordered to make restitution to Sharon Curto, the elderly homeowner

victim.

The People requested that the court order defendant to pay as restitution to Curto the $61,428.24 she had paid him for his work, plus interest, and $6,526.63 for attorney fees she incurred in litigation with defendant over the amount due under the contract. Later, the People increased its restitution request to include the cost Curto paid defendant to install one and one-half windows that were not installed ($620) and the cost required to be paid by Curto for remediation of defendant's substandard work ($15,800).

A restitution hearing was eventually held where Curto, defendant, and Sylvester Eagan, a defense expert witness, testified. According to Curto's testimony, in March 2013, she entered into a written home improvement contract with defendant for the painting of her house and installation of windows. By November 2013, although Curto had paid defendant over $61,000, defendant demanded another $7,768. Curto refused to pay this amount. Defendant filed a civil action against Curto for the outstanding $7,768, and Curto hired an attorney to defend her and to countersue for the recovery of the monies previously paid to defendant. By January 2016, Curto believed some of the work performed by defendant was defective because the paint was fading, chipping, bubbling, and peeling, and she obtained an estimate of $15,800 for repair and repainting. In addition, Curto determined defendant had only installed eight and one-half windows instead of the agreed upon ten windows.

Defendant testified that he had satisfactorily performed all the work requested and required under the contract, that Curto owed him $7,851, and any dissatisfaction Curto was experiencing was due to the house's natural weathering rather than substandard work. Egan, an expert evaluator, opined that a redwood-siding structure located a short distance from the ocean, such as Curto's house, would need yearly touch-up painting due to natural weathering.

The court determined it lacked authority to order restitution of monies paid by Curto unless the work performed by defendant was substandard or defective. The court also found Curto was not entitled to attorney fees because they were not incurred in connection with criminal restitution proceedings. The court accepted as reasonable Curto's $15,800 repainting and repair estimate, but found a substantial portion was necessitated by normal weathering

3

rather than defendant's substandard performance. Accordingly, the court discounted this amount by one-half ($7,900). The court also added $1,250 for the windows that were never installed, finding Curto's economic loss amounted to $9,150. Against this sum, the court deducted $7,851 that defendant claimed he was owed under the contract. The total amount of restitution ordered was $1,299.

## DISCUSSION

We review a restitution order to determine if the court abused its discretion. (*People v. Baker* (2005) 126 Cal.App.4th 463, 467.) Discretion is not abused if the restitution awarded is predicated on a factual and rational basis. (*Ibid.*) "However, a restitution order 'resting upon a '"demonstrable error of law"' constitutes an abuse of the court's discretion. [Citations.]' [Citation.]" (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) We conclude the court committed such an error in determining Curto was not entitled to restitution for all amounts she paid to defendant for his unlicensed work and in denying the attorney fees she incurred in the civil action which arose out of his criminal conduct.

*Restitution Statutes*

Under the California Constitution, victims have a right to restitution for financial losses. (Cal. Const., art. I, § 28, subd. (a); *People v. Carbajal* (1995) 10 Cal.4th 1114, 1122.) This constitutional mandate is implemented by Penal Code section 1202.4, which provides in relevant part: "(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (See *People v. Mearns* (2002) 97 Cal.App.4th 493, 498.)

In making a restitution order, the court must base its determination "on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f).) "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (Pen. Code, § 1202.4, subd. (f)(3).)

Courts must apply the right to restitution in light of "the strong public policy seeking to provide crime victims with direct restitution for all the 'losses they suffer' (Cal. Const., art. I, §

4

28, subd. (b)[(13)(A)]).” (*People v. Fulton* (2003) 109 Cal.App.4th 876, 885.) “In examining the restitution statute, ‘[t]he intent of the voters is plain: every victim who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss.’ [Citation.]” (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046.) The intent is to ensure that victims are made whole. (*People v. Bernal* (2002) 101 Cal.App.4th 155, 168.)

*Restitution of Money Paid to Defendant*

The People argue restitution for all compensation paid by Curto to defendant should be ordered, plus interest (see Pen. Code, § 1202.4, subd. (f)(3)(G)). We agree.[1]

Business and Professions Code section 7031, subdivision (a), provides, in relevant part, “no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person . . . .” Under Business and Professions Code section 7031, subdivision (b), “a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.”

This statute did not directly apply in the present case because, as indicated by the law’s plain terms, it bars “any action” brought by an unlicensed contractor seeking compensation and allows a person who uses an unlicensed contractor to “bring an action” to recover all payments made. (Bus. & Prof. Code, § 7031, subds. (a), (b); see *People v. King* (2006) 38 Cal.4th 617, 622 [“‘If the plain, commonsense meaning of a statute’s words is unambiguous, the plain meaning controls.’ [Citation.]”].) The instant criminal action was brought by the People, not

---

[1]We reject defendant’s argument that, by purportedly failing to object to the computation in the trial court, the People forfeited their arguments on appeal that the court erred in setting the amount of restitution. The People filed two briefs arguing restitution should be set as they requested and at the hearings repeatedly opposed the amount of restitution ordered.

5

defendant or Curto.  (See *People v. Green* (2004) 125 Cal.App.4th 360, 378 [victim of a crime is not a party to a criminal action].)

Nonetheless, the public policy behind the statute and the problem it seeks to deter lead us to the conclusion that Curto suffered a loss.  She paid defendant compensation for his work when, due to his lack of license, he was entitled to none.  This was an "economic loss" within the meaning of Penal Code section 1202.4, subdivision (f)(3), in that Curto remitted $61,428 to defendant when defendant was entitled to zero money.  While Curto paid for the services of a licensed contractor, she received instead unlicensed work which, pursuant to Business and Professions Code section 7031, had no legally recognizable value.

Defendant complains that, to the extent Curto benefitted from his unlicensed work in the form of labor and materials provided, she would be unjustly enriched and receive a windfall if he were ordered to reimburse the entire sum paid by Curto.  In other contexts, it has been held that restitution may not be ordered when a windfall would be the result.  (See, e.g., *People v. Millard*, *supra*, 175 Cal.App.4th at p. 27 [restitution for victim's medical expenses properly limited to amount paid by insurance company rather than higher amount billed by medical providers]; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 995 [because used piece of equipment was stolen, victim was entitled to restitution in an amount equal to replacement value of used, not new, property].)

"[T]he theory of unjust enrichment applies to prevent one party from obtaining a windfall at the expense of another in circumstances where its application 'involves *no violation or frustration of law or opposition to public policy*, either directly or indirectly.'  [Citation.]" (*Tarlesson v. BroadwayForeclosure Investments, LLC* (2010) 184 Cal.App.4th 931, 938 [disallowing homestead claim of exemption on theory of unjust enrichment would frustrate homestead legislation intended to benefit debtor and debtor's family], italics added.)

But, in cases involving an unlicensed contractor, the Legislature has determined that full recoupment of payment is required, even if a person who employs such a contractor is benefited or enriched thereby, and that such a rule is necessary to strongly deter unlicensed contracting work.  "'To protect the public, [Business and Professions Code section 7031] imposes strict and

6

harsh penalties for a contractor's failure to maintain proper licensure.' [Citation.]" (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 30.) "'[T]he legislative committee reports show that, in enacting [Business and Professions Code section] section 7031[, subdivision] (b), the Legislature was specifically aware that permitting reimbursement may result in harsh and unfair results to an individual contractor and could result in unjust enrichment . . . , but nonetheless decided that the rule was essential to effectuate the important public policy of deterring licensing violations and ensuring that all contractors are licensed.' [Citation.]" (*Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 521.)[2] Thus, no *unjust* enrichment occurs when a victim receives restitution for amounts he or she is legally entitled to recover. (See Bus. & Prof. Code, § 7031).

The Legislature concluded an unlicensed contractor is entitled to no money "[r]egardless of the equities." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 997). Permitting the contractor to avoid paying restitution of what a victim paid would frustrate the Legislature's intent and be contrary to the public policy of deterrence embodied in both Penal Code section 1204.2 and Business Code section 7031.

The dual public policies in favor of restitution victims and against unlicensed contractors persuade us to interpret the restitution laws to favor full recovery. The trial court thus erred in not ordering restitution for all the amounts paid by Curto to defendant, plus interest under Penal Code section 1202.4, subdivision (f)(3)(G).

*Attorney Fees*

Penal Code section 1202.4, subdivision (f)(3)(H), provides that economic loss for the purposes of victim restitution includes "[a]ctual and reasonable attorney's fees and other costs

---

[2]As explained by *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 667-668, "An earlier version of the bill enacting [Business and Professions Code] section 7031(b) had provided that reimbursement would not be permitted 'when the person who used the services of an unlicensed contractor knew that the contractor was unlicensed prior to the time that any payments are made.' [Citation.] This provision was initially included because of a concern that the bill would be 'unfair[]' to a contractor who fully performed the contract and would 'unjustly enrich[]' the hiring party. [Citation.] However, the Senate later deleted this language 'in order to more strongly encourage contractors to become licensed.' [Citation.]" (Italics omitted.)

of collection accrued by a private entity on behalf of the victim." Attorney fees that have been held to be recoverable as victim restitution include contingency fees incurred by a victim to secure a settlement from the defendant's auto insurer in a victim's personal injury action (*People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1405-1406; *People v. Fulton*, *supra*, 109 Cal.App.4th at pp. 882-885), and fees incurred to obtain a civil judgment against the defendant for conversion (*People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409-1411).

All of Curto's fees were recoverable because they constituted a "determined economic loss incurred as a result of defendant's criminal conduct" (Pen. Code, § 1202.4, subd. (f)(3)) of contracting without a license. The attorney fees related to Curto's counterclaim were subject to restitution as they were incurred to recover her economic losses—the money she paid defendant and to which he was not entitled due to his illegal conduct. (See Pen. Code, § 1204.2, subd. (f)(3)(H); Bus. & Prof. Code, § 7031, subd. (b).)

Fees incurred in defending against defendant's action should have also been ordered as restitution because, had defendant been successful in his action, the net effect would have been to reduce any recovery by Curto in her own action for disgorgement of compensation. Hence, Curto suffered an economic loss when she incurred attorney fees to defend against defendant's improper claim for payment made pursuant to a contract he illegally entered into without a license. (See Bus. & Prof. Code, § 7031, subd. (a).)[3]

## DISPOSITION

The restitution order is reversed. The matter is remanded for further proceedings consistent with this opinion regarding the amount to be ordered in restitution.

_____

[3]Although the trial court erred in not ordering full restitution for all compensation Curto paid to defendant, it did not abuse its discretion in finding Curto sustained an additional loss amounting to $7,900 due to defendant's substandard work. Curto claimed $15,800 for remediation, but the court rationally found, based on testimony concerning the normal weathering of the house, that only half this amount was attributable to defendant's substandard performance. As we determine the court erred in failing to order restitution for all that was paid to defendant by Curto, on remand, the court is to add the $7,900 due to substandard work to the total amount of restitution.

8

                                              RICCIARDULLI, J.

We concur.


                                              _____
                                              P. MCKAY, P. J.


                                              _____
                                              B. JOHNSON, J.

9

**This Opinion Was Filed And Certified For Publication On November 16, 2016.**

Trial Court Bench Officer:

    Judge Edward B. Moreton, Jr.

Attorneys:

    For Plaintiff/Appellant:

        Marsha Jones Moutrie, City Attorney, and
        Deputy City Attorneys, Yibin Shen and Steven Chang
        1685 Main Street, Room 310
        Santa Monica, CA  90410

    For Defendant/Respondent:

        Ronald L. Brown, Public Defender of Los Angeles County,
        Albert J. Menaster, Head Deputy Public Defender, and
        Ryan Wolfe and Nick Stewart-Oaten, Deputy Public Defenders
        320 West Temple Street
        590 Hall of records
        Los Angeles, CA  90012