Filed 8/22/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL KERR WALKER, | No. B280100 |
| Petitioner, | (App. Div. No. BR052772 & Super. Ct. No. 5WA25326) |
| v. | |
| APPELLATE DIVISION OF THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Patti Jo McKay, Alex A. Ricciardulli, and Barbara R. Johnson, Judges. Petition granted in part and denied in part.

Kelly G. Emling, Chief Deputy Public Defender, Albert J. Menaster, Nick Stewart-Oaten, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph Lawrence, Interim City Attorney, Yibin Shen, Chief Deputy City Attorney, Melanie Skehar, Deputy City Attorney, for Real Party in Interest.

———————————————

Petitioner Michael Kerr Walker entered a plea of no contest to a misdemeanor count of contracting without a license. (Bus. & Prof. Code, § 7028, subd. (a).)[1] As a condition of probation, the trial court ordered Walker to pay restitution for the actual economic loss suffered by the victim, but denied the People's request to require Walker to make full restitution of all payments he received for his construction services and attorney fees incurred by the victim. On appeal by the People, the Appellate Division of the Superior Court of Los Angeles County reversed in a published opinion, holding that the victim was entitled to restitution for the full amount she paid to Walker, plus interest, as well as her attorney fees. In his petition for writ of mandate, Walker contends the Appellate Division erred in requiring criminal restitution in a manner intended to apply to civil actions, and by ordering restitution of attorney fees in an amount not proven by substantial evidence. We

---

[1] Undesignated statutory references are to the Business and Professions Code.

conclude that the civil disgorgement statute relied on by the Appellate Division does not control the amount of restitution in a criminal action. We further conclude that the Appellate Division did not err in ordering restitution of Curto's attorney fees. We therefore grant the mandate petition in part and deny in part.

## FACTUAL AND PROCEDURAL HISTORY

In August 2013, Sharon Curto entered into a written construction contract with Walker, an unlicensed contractor, to paint her home and to install 10 new windows. The original contract price was for $49,860. As the work progressed, additional work was added to the project and additional invoices were issued by Walker. On November 30, 2013, Walker sent Curto a demand letter stating she owed him $9,851. At that point, Curto had paid Walker a total of $61,428. Curto subsequently paid Walker $2,000 against the $9,851 balance. Walker initiated a lawsuit against Curto for nonpayment of the full amount due. Curto hired an attorney to defend her in the lawsuit.[2] Curto filed a complaint against Walker with the California Department of Consumer Affairs Contractors State License Board (Board). During the investigation, the Board discovered Walker was not a licensed contractor and referred the matter to the Santa Monica City Attorney for criminal prosecution.

---

[2] Walker's complaint and the related proceedings are not provided in the record.

On November 4, 2015, Walker entered his plea of no contest to a violation of section 7028, subdivision (a). The court suspended imposition of sentence, and placed Walker on summary probation for two years. The court set a hearing to determine the amount of restitution Walker would be ordered to pay Curto as a condition of his probation.

The trial court conducted an extensive restitution hearing over the course of four days, which included briefing by both parties. The People's brief requested the court order Walker to pay Curto the entire amount she had paid him for his work, plus interest, and attorney fees incurred in the civil action. Later, the People increased the restitution request to include the cost for Curto to install one and a half windows that were not installed by Walker, and to repair and repaint her house.

The trial court denied the People's request for a full refund of Curto's payments to Walker. The court further denied Curto attorney fees incurred in the civil action. However, the court allowed the People to establish the actual economic loss suffered by Curto. Curto testified that Walker's work was substandard because the paint was fading, chipping, bubbling, and peeling. In December 2015, Curto obtained an estimate of $15,800 to repair and repaint her house. Curto further testified that Walker did not complete the window installation, as he only replaced eight and a half out of the ten windows. Curto obtained an estimate from the Board suggesting that it will cost at least

4

$625 to complete the window installation.  Sylvester Egan, a licensed contractor and expert witness for the defense, testified that constant maintenance is required on all paint jobs due to a house's natural weathering.

The trial court ordered Walker to pay restitution in the amount of $1,299.  This figure consisted of $1,250 for the installation of the one and a half windows, covering the cost of labor and materials.  The court accepted as reasonable Curto's $15,800 repair and repainting estimate, but found a substantial portion was necessitated by normal weathering rather than Walker's substandard performance.  Therefore, the court discounted this amount by one-half ($7,900).  The court then subtracted $9,150 ($7,900 for the paint repair plus $1,250 for the windows) from the amount that was unpaid to Walker ($9,150 minus $7,851), which left a balance of $1,299 in economic loss.

The People filed a Notice of Appeal from the trial court's restitution order.  On November 16, 2016, the Appellate Division reversed the restitution order in a published decision.  (*People v. Walker* (2016) 6 Cal.App.5th Supp. 38.)  The Appellate Division held the trial court abused its discretion in not ordering full restitution for all compensation Curto paid to Walker, plus interest, as well as not ordering attorney fees incurred in the civil action.  (*Id.* at pp. 43-46.)  In reaching its decision, the Appellate Division relied on section 7031, which provides that an unlicensed contractor cannot not sue for payment of his unlicensed work, and the homeowner has the right to bring a civil

action to recover all sums paid to him. (*Id.* at p. 43.) The Appellate Division recognized that section 7031 is not directly applicable in a criminal case, however, "the impact of the statute means, in practical terms, that the homeowner parted with her money in a situation where she did not have to do so. Thus, even if the work performed by [Walker] bestowed a benefit to the homeowner, she nonetheless incurred an economic loss for purposes of her constitutional and statutory right to restitution (see Cal. Const. art. I, § 28, subd. (a), Pen. Code, § 1202.4, subd. (a)(1)) in the amount of all monies paid to him for his unlicensed work. In addition, [Curto] was entitled to restitution of attorney fees incurred in defending against [Walker's] civil action for unpaid compensation and in prosecuting her counterclaim to recover the money she paid [Walker] under the contract. (See Pen. Code, § 1202.4, subd. (f)(3)(H).)" (*Id.* at p. 40.) On December 5, 2016, Walker's petition for rehearing was denied.

On December 20, 2016, this court declined to exercise its authority to transfer jurisdiction of the matter to this court. On February 3, 2017, we summarily denied Walker's petition for writ of mandate. On March 29, 2017, the California Supreme Court granted Walker's petition for review and transferred the matter back to this court, with directions to vacate our February 3, 2017 order and direct the respondent to show cause why relief sought in the petition should not be granted. We complied with the orders from the Supreme Court by vacating our order denying the petition for writ of mandate and issuing the order to show

6

cause as directed.  We now proceed to consider the merits of the petition.

## DISCUSSION

"Restitution is constitutionally and statutorily mandated in California."  (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045 (*Keichler*); see Cal. Const., art. 1, § 28; Pen. Code, § 1202.4.)  Penal Code section 1202.4, subdivision (f) provides for a direct restitution order "in every case in which a victim has suffered economic loss as a result of the defendant's conduct."  "The order is to be for an amount 'sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct.'  (*Id.,* § 1202.4, subd. (f)(3).)" (*People v. Brasure* (2008) 42 Cal.4th 1037, 1074-1075.)  A person who utilizes the services of a convicted unlicensed contractor is eligible for restitution for economic losses (Pen. Code, § 1202.4, subd. (f)), regardless of whether he or she had knowledge that the contractor was unlicensed.  (§ 7028, subd. (h).)

"'The standard of review of a restitution order is abuse of discretion.  "A victim's restitution right is to be broadly and liberally construed."  [Citation.]  '"When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court."'  [Citations.]'  [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 467.)  "In

7

reviewing the sufficiency of the evidence, the "'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.]  Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.  [Citation.]"  (*Id.* at pp. 468-469.) The trial court ""must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious."'  [Citation.]" (*Keichler*, *supra*, 129 Cal.App.4th at p. 1045.)

The Appellate Division erred in holding that the trial court abused its discretion, as there was a factual and rational basis for the restitution order.  The plain language of Penal Code section 1202.4 limits the trial court's restitution order to actual economic losses suffered by the victim in the circumstances of this case.  (Pen. Code, § 1202.4, subd. (f)(3)(A) [restitution order should be "the actual cost of repairing the property when repair is possible"].)  The restitution order is not intended to provide the victim with a windfall; instead, a victim is entitled to reimbursement only for his or her actual loss.  (*People v. Millard* (2009) 175 Cal.App.4th 7, 28; *People v. Fortune* (2005) 129 Cal.App.4th 790, 794-795.)  There is no requirement the restitution order "reflect the amount of damages that might be recoverable in a civil action."  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; see *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1173.)  Here, the

8

trial court's restitution order provided for Curto's actual economic loss, which was determined to be the cost of installing the remaining windows and repainting her house, adjusted by the full amount she still owed to Walker for his services. Under the plain language and meaning of Penal Code section 1202.4, subdivision (f), a restitution order limiting recovery to the victim's actual economic losses was well within the discretion of the trial court.

The Appellate Division's reliance on section 7031 to support full recovery was misplaced. As the Appellate Division acknowledged, the plain language of Business and Professions section 7031 restricts the statute to civil proceedings. (§ 7031, subd. (b) ["a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract"].)

Contrary to the Appellate Division's analysis, the Legislature did not intend section 7031 to define the amount of criminal restitution under section 7028. In 2009, the Legislature passed Assembly Bill No. 370, which added subdivision (h) to section 7028. (Stats. 2009, ch. 319, § 1.) Subdivision (h) currently provides: "For any conviction under this section, a person who utilized the services of the unlicensed person is a victim of a crime and is eligible, pursuant to subdivision (f) of Section 1202.4 of the Penal Code, for restitution for economic losses, regardless of whether he or she had knowledge that the person was

9

unlicensed."  Assembly Bill No. 370 does not indicate that the Legislature contemplated that section 7031 would apply to fix the amount of restitution in criminal cases.  To the contrary, the Legislature declared that "[c]urrent law states that a person who uses an unlicensed contractor may bring a civil action to recover all compensation paid to the unlicensed contractor.  However, no statute specifically addresses the issue of criminal restitution for victims of unlicensed contractors."  (Assem. Com. on Bus. and Prof., Analysis of Assem. Bill No. 370 (2009-2010 Reg. Sess.) Mar. 31, 2009, p. 2.)  "Consumers who intentionally hire an unlicensed contractor can already receive all the payments made to the unlicensed contractor through the civil courts (Business and Professions Code Section 7031(b)).  This bill is mainly targeted at helping consumers who have few resources and little understanding of the process (filing civil cases, checking whether a contractor is licensed or not, etc.) and making it easier for [consumers] to receive compensation for *only* their economic losses.  This bill would also make gaining restitution from an unlicensed contractor in criminal courts more consistent with existing law regarding restitution in civil courts."  (Dept. Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 370 (2009-2010 Reg. Sess.) June 29, 2009, p. 4, italics added.)  The sponsor of Assembly Bill No. 370, Los Angeles City Attorney Rocky Delgadillo, specifically stated that section 7031 only applies to a civil action and emphasized the need for a criminal counterpart.  (Sen. Com. on Business, Professions and

10

Economic Development, Analysis of Assem. Bill No. 370 (2009-2010 Reg. Sess.) June 8, 2009, p. 3 ["Business and Professions Code 7031(b) states that a person who uses an unlicensed contractor may bring a civil action to recover all compensation paid to the unlicensed contractor. However, no statute specifically addresses the issue of criminal restitution for victims of unlicensed contractors"].) Delgadillo's successor, Carmen A. Trutanich, wrote a letter to Governor Arnold Schwarzenegger on September 23, 2009, urging him to sign Assembly Bill No. 370. Trutanich stated, "Presently, our civil laws (§ 7031(b)) specifically mandate that unlicensed contractors disgorge all monies paid by their victims (more than just economic loss) . . . . However, our current criminal laws do not clearly require unlicensed contractors to pay restitution for even the economic loss." (City Attorney Carmen A. Trutanich, letter to Governor Arnold Schwarzenegger re Assem. Bill No. 370 (2009-2010 Reg. Sess.) Sept. 23, 2009, Governor's chaptered bill files, ch. 319.) City Attorney Trutanich concluded, "This bill provides victims with restitution, limited to economic loss, should they hire an unscrupulous unlicensed contractor who performs poor shoddy workmanship." (*Ibid.*)

Under the statutory scheme, the civil remedy of refunding "all compensation paid" is intended to deter unlicensed contractors by depriving them of all monetary benefit (§ 7031, subd.(b)). The restitution statute, in contrast, serves primarily to compensate victims for actual economic losses. Unlike section 7031, section 1202.4 of the

11

Penal Code does not provide for a full refund of all payments to an unlicensed contractor. A victim who is made whole for economic losses under Penal Code section 1202.4 remains able to pursue the civil law remedy of a full refund. (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1132 ["An order of restitution pursuant to [Penal Code] section 1202.4 does not preclude the crime victim from pursing a separate civil action based on the same facts from which the criminal conviction arose"].) We conclude that the trial court acted within its discretion in ordering restitution for the actual economic loss suffered by Curto. Therefore, the decision in *People v. Walker* (2016) 6 Cal.App.5th Supp. 38, is disapproved to the extent it relied on the civil disgorgement statute to impose criminal restitution.

Attorney Fees

Contrary to Walker's contention, the Appellate Division did not err in holding the trial court abused its discretion in failing to order Curto attorney fees. At trial, the People sought restitution for Curto's attorney fees incurred in the civil action, totaling to $6,526.63. The People argued Curto had to hire an attorney to recover her economic loss and prevent further economic losses "stemming from [Walker's] unlicensed and unlawful activities." The People attached to their brief what appears to be an email from Curto's counsel stating the amount of attorney fees expended in the civil case. (*People v. Millard, supra*, 175 Cal.App.4th

12

at p. 26 ["a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss"]; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543 [Penal Code "[s]ection 1202.4 does not, by its terms, require any particular kind of proof].)

Penal Code section 1202.4, subdivision (f)(3)(H) provides that economic loss for the purposes of victim restitution includes "[a]ctual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." Reasonable attorney fees incurred by the victim are recoverable as an item of restitution only to the extent that they were incurred in efforts to recover economic damages sustained by the victim as a result of the criminal conduct. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 879, 884-885.) Walker initiated the civil action, erroneously because he was not a licensed contractor, to recover the remaining balance on the contract. Curto retained counsel for the purpose of recovering her economic loss and prevent further economic loss "stemming from [Walker's] unlicensed and unlawful activities." The evidence is undisputed Curto incurred attorney fees due to Walker's ill-conceived action. Therefore, the Appellate Division did not err in holding that the trial court abused its discretion in failing to award Curto restitution for attorney fees incurred in efforts to recover her economic damages as a result of Walker's work as an unlicensed contractor.

13

## DISPOSITION

Let a peremptory writ of mandate issue directing the Appellate Division of the Superior Court of Los Angeles County to vacate its prior opinion and issue a new opinion affirming the trial court's restitution order as to the victim's actual economic losses, but reversing the trial court's restitution order as to the victim's attorney fees.


KRIEGLER, Acting P. J.

I concur:


DUNNING, J.[3*]

---

* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

Michael Kerr Walker v. The Appellate Division of the
Superior Court of Los Angeles County
B280100


BAKER, J., Concurring in Part and Dissenting in Part


Business and Professions Code section 7028 provides that a victim who uses the services of a person convicted of operating as an unlicensed contractor "is eligible, pursuant to subdivision (f) of Section 1202.4 of the Penal Code, for restitution *for economic losses*, regardless of whether he or she had knowledge that the person was unlicensed." (Bus. & Prof. Code, § 7028, subd. (h), emphasis added.) Another provision of the Business and Professions Code, section 7031, states that "a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover *all compensation paid* to the unlicensed contractor for performance of any act or contract." (Bus. & Prof. Code, § 7031, subd. (b), emphasis added.) Defendant Michael Walker (defendant) sustained a conviction for acting in the capacity of a contractor without a license, and the People attempted to recover the full amount his victim, Sharon Curto (Curto), paid him as restitution under Business and Professions Code section 7028—Curto did not then bring a separate civil action as authorized by Business and

Professions Code section 7031. For reasons I will explain, I believe the issue of whether the trial court's restitution award was proper turns less on a question of statutory interpretation and more on the question of whether the trial court's restitution calculation was an abuse of its discretion.

Although the Legislature's statutory scheme invites needless civil litigation, I agree with the majority that Business and Professions Code section 7031 cannot be used to interpret the applicable criminal restitution statutes so as to require an unlicensed contractor to make restitution in the amount of all payments the contractor received.[1] But concluding Business and Professions Code section 7031 is not a reliable interpretive guide still leaves another

---

[1] I do concede, though, that there are elements in the legislative history of Business and Professions Code section 7028, subdivision (h) that can be read to point to a contrary conclusion. The Enrolled Bill Report cited by the majority, for instance, states: "This bill . . . defines people who use unlicensed contractors, knowingly or not, as victims in order to allow these people to receive restitution for their losses through the criminal courts rather than having to spend their own time and money to file their own case in the civil courts against the unlicensed contractor." (Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 370 (2009-2010 Reg. Sess.) June 29, 2009, p. 1.) The same report also states: "This bill would also make gaining restitution from an unlicensed contractor in criminal courts more consistent with existing law regarding restitution in civil courts." (*Id.* at p. 4.)

2

question—I submit, the key question—unresolved: what is the "loss" that is appropriately compensable by restitution?

Defendant argues the issue by repeatedly treating Business and Professions Code section 7028, and the cross-referenced provision of the Penal Code, as if they authorize restitution for only "actual losses." Of course, that disregards the term the statutes actually use: "economic loss(es)." (Bus. & Prof. Code, § 7028, subd. (h); Pen. Code, § 1202.4, subd. (f).) The distinction is important. A reference to *actual* loss would more strongly suggest that, in an unlicensed contracting case, the pertinent "loss" should be calculated as the difference between the quality and value of work performed by an unlicensed contractor as compared to the quality and value of the work if it were done by a contractor with a license.[2] The references to *economic* loss that appear in the statute, however, are best read as a qualifier to distinguish monetary or financial losses (which are compensable) from compensation for psychological or other noneconomic harm (which, with exceptions, are not). (Compare, e.g., Pen. Code, § 1202.4, subd. (f) ["[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the

---

[2] I do not believe this is a case of "stolen or damaged property," which would trigger the Penal Code section 1202.4 provision that limits restitution to "the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (Pen. Code, § 1202.4, subd. (f)(3)(A).)

3

defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court"] with Pen. Code, § 1202.4, subd. (f)(3)(F) [for felony violations of Penal Code section 288, a court should order restitution for "[n]oneconomic losses, including, but not limited to, psychological harm"].)[3]

By using the malleable term "economic loss," I believe the statutes give trial courts significant discretion to determine what in fact constitutes the "loss" in an unlicensed contractor case. (*People v. Giordano* (2007) 42 Cal.4th 644, 663 [trial courts have broad discretion to choose a method for calculating the amount of restitution].) On a strong enough record, likely necessitating expert testimony, I believe a trial court could order restitution of nearly all (or perhaps even all) payments made to a convicted unlicensed contractor without transgressing the limits of that discretion. We have no such record in this case, and that is partly why I conclude the result reached by the appellate division cannot stand. Having said that, I am nevertheless of the view that the manner in which the trial court

---

[3] I leave for another day the task of unraveling how Penal Code section 1202.4 can authorize restitution for "every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to . . . [¶] . . . [¶] Noneconomic losses . . . ." (Pen. Code, § 1202.4, subd. (f)(3).)

calculated the restitution award here was an abuse of the court's discretion.

The trial court's restitution award was partly founded on the price of the contract victim Curto entered into with defendant. Specifically, the court took the remaining balance Curto had not paid on that contract ($7,851) and subtracted that amount from the court's estimate of what it would cost to fix the house renovation defects attributable to defendant's work ($9,150). The court ruled the resulting figure ($1,299) would be the restitution award.

The problem, of course, is the decision to use the contract price in calculating the restitution owed. At the time Curto agreed to the contract, she believed (based on defendant's misrepresentations) that he was a licensed contractor. Had she known before entering into the contract that defendant in fact had no license, there is no reason to believe she would have agreed to pay such a high amount. Indeed, there is good reason to conclude otherwise: in addition to plain common sense, which tells us, for instance, that a buyer will pay less for a chair built by IKEA than one built by Charles and Ray Eames, Curto's testimony during the restitution hearing indicated she relied on the belief that defendant was licensed in selecting him for the renovation job. By treating the license-based contract price as a given, rather than reducing it to account for defendant's subsequently discovered unlicensed status, the trial court gave *defendant* a windfall—and failed to make Curto fully whole. I would accordingly remand the matter to the trial

court to recalculate the restitution award consistent with the views I have expressed.[4]

BAKER, J.

_____

[4] I agree with the majority that the appellate division did not err in ordering Curto's attorney fees to be included as part of the restitution award. (See *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 263-264.)

6